| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Edwin J. Rambuski   SBN 109602<br>Law Offices of Edwin J. Rambuski<br>1401 Higuera Street<br>San Luis Obispo, CA 93401<br>Telephone: (805) 546-8284<br>Facsimile: (805) 546-8489<br>Email: edwin@rambuskilaw.com | |

☐ *Individual appearing without attorney*
☒ *Attorney for:* Movant Lamson-Elliott Investments, LLC

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA -  NORTHERN DIVISION

| In re:<br><br>Hospice Partners, Inc. | CASE NO.: 9:25-bk-11033-RC<br><br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l)**<br>**(with supporting declarations)**<br>**(UNLAWFUL DETAINER)** |
| Debtor(s). | DATE: 09/09/2025<br>TIME: 9:00 am<br>COURTROOM: 201 |
| **Movant**: Lamson-Elliott Investments, LLC | |

1. **Hearing Location**:

   ☐ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701

   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367     ☒ 1415 State Street, Santa Barbara, CA 93101

   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 08/13/2025

Law Offices of Edwin J. Rambuski
_____
Printed name of law firm (if applicable)

Edwin J. Rambuski
_____
Printed name of individual Movant or attorney for Movant


/s/ Edwin J. Rambuski
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 2                          **F 4001-1.RFS.UD.MOTION**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER
## CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY
### (Unlawful Detainer)

**1. Movant is the:**

a. ☒  Owner of the Property
b. ☐  Authorized Agent of the owner of the Property
c. ☐  Other (*specify*):

**2. The Property at Issue (Property):**

Type of Property:  ☐ Residential   ☒ Nonresidential

*Street Address*: 445 Higuera Street
*Unit/Suite Number*:
*City, State, Zip Code*: San Luis Obispo, CA 93401

**3. Bankruptcy Case History:**

a. ☒  A voluntary   ☐ An involuntary   petition under chapter   ☒ 7  ☐ 11  ☐ 12  ☐ 13
      was filed on (*date*): 08/01/2025

b. ☐  An order to convert this case to chapter   ☐ 7  ☐ 11  ☐ 12  ☐ 13
      was entered on (*date*):

c. ☐  A plan was confirmed on (*date*):

**4. Pursuant to 11.U.S.C. § 362(b)(22) and (23) there is no stay because (*check all that apply*):**

a. ☐  Movant commenced an eviction, unlawful detainer action or similar proceeding against the Debtor involving
      residential property in which the Debtor resides and:

   (1) ☐  The Debtor has not filed and served on Movant the certification required under 11 U.S.C. § 362(l)(1).

   (2) ☐  The Debtor or adult dependent of the Debtor has not deposited with the clerk any rent that would become
          due during the 30-day period after the filing of the petition.

   (3) ☐  The Debtor or adult dependent of the Debtor has not filed and served on Movant the further certification
          required under 11 U.S.C. § 362(l)(2) that the entire monetary default that gave rise to the judgment has
          been cured.

   (4) ☐  Movant filed and served an objection to the Debtor's certification.  A copy of the objection is attached as
          Exhibit _____.  A hearing on this objection is set for (*date*) _____.

**5. Grounds for Relief from Stay: (*check all that apply*)**

a. ☐  Pursuant to 11 U.S.C. § 362(d)(1), cause exists because, as of the bankruptcy petition date, the Debtor had
      no right to continued occupancy of the premises, as follows:

   (1) ☐  Movant caused a notice to quit to be served on the Debtor.

   (2) ☐  An unlawful detainer proceeding was commenced on (*date*) _____.

   (3) ☐  An unlawful detainer judgment was entered on (*date*) _____.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

(4) ☐ Movant acquired title to the Property by foreclosure sale before the bankruptcy petition was filed and recorded the deed within the period provided by state law for perfection.

(5) ☐ Movant acquired title to the Property by foreclosure sale after the bankruptcy petition was filed and recorded the deed within the period provided by state law for perfection.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(1) the Debtor's right to possession should be terminated because (*check all that apply*):

(1) ☐ The lease or other right of occupancy expired by its terms on (*date*) _____.

(2) ☐ The lease has matured, been rejected or deemed rejected by operation of law on (*date*) _____.

(3) ☒ Lease payments have not been made after the filing of the bankruptcy petition.

(4) ☐ An unlawful detainer action was filed to obtain possession of the Property on grounds of endangerment of the Property or because of illegal use of controlled substances on the Property and Movant filed and served upon the Debtor a certification that ☐ such an action was filed or
☐ that within the 30 days preceding the certification, the Debtor has endangered the subject Property or illegally allowed the use of controlled substances on the Property.  A copy of Movant's certification is attached as Exhibit _____.  The Debtor ☐ has ☐ has not filed an objection to Movant's certification. A copy of the Debtor's objection, if any, is attached as Exhibit _____.  A hearing on this objection is set for (*date*) _____.

(5) ☐ The bankruptcy case was filed in bad faith:

(A) ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

(B) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

(C) ☐ The Debtor filed only a few case commencement documents.  No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

(D) ☐ There was a recent transfer of all or part ownership of, or other interest in the Property without the consent of the Movant or court approval.

c. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and pursuant to 11 U.S.C. § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

6. **Grounds for Annulment of the Stay.**  Movant took postpetition actions against the Property or the Debtor:

a. ☐ These actions were taken before Movant knew the bankruptcy petition was filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other:

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 4                        **F 4001-1.RFS.UD.MOTION**

7.  **Evidence in Support of Motion:  (*Important Note: Declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.*)**

    a.   The UNLAWFUL DETAINER DECLARATION on page 7.

    b.   ☐  Supplemental declaration(s).

    c.   ☐  Other (*specify*):


**Movant requests the following relief.**

1.   Relief from stay pursuant to:  ☒ 11 U.S.C. § 362(d)(1)   ☒ 11 U.S.C. § 362(d)(2)

2.   ☒  Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to obtain possession of the Property.

3.   ☐  Confirmation that there is no stay in effect.

4.   ☐  The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition acts taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

5.   ☐  The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6.   ☐  The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7.   ☒  A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing of this motion:
    ☒ without further notice.
    ☐ upon recording of a copy of the order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

8.   ☐  Relief from stay is granted under 11 U.S.C. § 362(d)(4), if the order granting this motion is recorded in compliance with state laws governing notices of interest or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than two years after the date of entry of such order, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and a hearing.

9.   ☐  The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice.
    ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

10.  ☐  The order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

11.  ☒  The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                          Page 5                              **F 4001-1.RFS.UD.MOTION**

12. ☒ If relief from stay is not granted with respect to the Property because the Property is the subject of a lease that may be assumable;

    a. ☐ Establishment of a deadline for assumption or rejection of the lease.

    b. ☒ Adequate protection in the form of regular payments at the lease rate from petition date until assumption or rejection of the lease.

13. ☐ Other relief requested.

Date:  08/13/2025

                       Law Offices of Edwin J. Rambuski
                       Print name of law firm (*if applicable*)

                       Edwin J. Rambuski
                       Print name of individual Movant or attorney for Movant (*if applicable*)

                       /s/ Edwin J. Rambuski
                       Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                              Page 6                       **F 4001-1.RFS.UD.MOTION**

## UNLAWFUL DETAINER DECLARATION

I, (*name of declarant*) _Lauren Somma_____, declare as follows:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the Property because (*specify*):

   a. ☐ I am the Movant and owner of the Property.

   b. ☐ I manage the Property as the authorized agent for the Movant.

   c. ☐ I am employed by Movant as (*title and capacity*):

   d. ☒ Other (*specify*):
   I am one of the Managers of Movant Lamson-Elliott Investments, LLC, the owner of the Property.

2. a. ☒ I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the rental of this Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (see attached):

3. The Property is:

   ☐ Residential  ☒ Nonresidential

   *Street Address*: 445 Higuera Street
   *Unit/Suite Number*:
   *City, State, Zip Code*: San Luis Obispo, CA 93401

4. Movant is the ☒ legal owner of the Property, or ☐ the owner's legally authorized agent. A true and correct copy of the trustee's deed upon sale, lease, rental agreement, or other document evidencing Movant's interest in the Property is attached as Exhibit _1____. A true and correct copy of the applicable document establishing Movant's authority as agent for the owner is attached as Exhibit _____.

5. The Debtor asserts a possessory interest in the Property based upon:

   (1) ☐ a month-to-month tenancy

   (2) ☒ a lease that is in default

   (3) ☐ after a foreclosure sale that was held on (*date*): _____.

   (4) ☐ other (*specify*):

6. The Debtor failed to pay:

   a. ☒ The monthly rent of $_10,300.00_____ beginning on (*date*): _08/01/2025__.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

b. ☐ Other obligations including:

(1) ☐ Common area maintenance charges

(2) ☐ Property taxes

(3) ☐ Other obligations (*specify*):

7. Procedural status

a. ☐ The lease matured or was rejected on (*date*) _____:

(1) ☐ by operation of law.

(2) ☐ by order of the court.

b. ☐ Movant caused a notice to quit to be served upon the Debtor on (*date*) _____, and a true and correct copy is attached as Exhibit _____.

c. ☐ Before the bankruptcy petition was filed:

(1) ☐ Movant filed a complaint for unlawful detainer against the Debtor on (*date*) _____, and a true and correct copy is attached as Exhibit _____.

(2) ☐ Trial was held on (*date*) _____.

(3) ☐ Trial was continued to (*date*) _____.

(4) ☐ An unlawful detainer judgment against the Debtor was entered on the complaint for unlawful detainer on (*date*) _____, and a true and correct copy is attached as Exhibit _____.

(5) ☐ A writ of possession for the Property was issued on (*date*) _____, and a true and correct copy is attached as Exhibit _____.

d. ☐ After the bankruptcy petition was filed:

(1) ☐ The Debtor has not filed and served on the Movant the certification required under 11 U.S.C. § 362(l)(1).

(2) ☐ The Debtor or adult dependent of the Debtor has not deposited with the clerk any rent that would become due during the 30-day period after the filing of the bankruptcy petition.

(3) ☐ The Debtor or adult dependent of the Debtor has not filed and served on the Movant the further certification required under 11 U.S.C. § 362(l)(2) that the entire monetary default that gave rise to the judgment has been cured.

(4) ☐ The Debtor filed and served on the Movant the certification required under 11 U.S.C. § 362(d)(1).

(A) ☐ Movant filed and served an objection a copy of which is attached as Exhibit _____.  A hearing on this objection is set for (*date*) _____.

(B) ☐ Movant has not filed and served an objection.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

(5) ☐ An unlawful detainer action was filed to obtain possession of the Property on grounds of endangerment of the Property or because of illegal use of controlled substances on the Property and Movant has filed a certification that ☐ such action was filed or ☐ that the Debtor has endangered the Property within 30 days preceding the certification or allowed the illegal use of controlled substances on the Property. A copy of Movant's certification is attached hereto as Exhibit _____. The Debtor ☐ has ☐ has not filed an objection to Movant's certification. A copy of the Debtor's objection, if filed, is attached as Exhibit ___. A hearing on this objection is set for: _____.

(6) ☒ Regular lease payments have not been made after the bankruptcy petition was filed.

8. ☒ The Debtor does not have an interest in the Property that could be assumed or assigned under 11 U.S.C. § 365.

9. ☒ The Property is not necessary to an effective reorganization because it is:

   a. ☐ Residential, and is not producing income for the Debtor.

   b. ☒ Commercial, but no reorganization is reasonably in prospect.

   c. ☐ No longer property of the estate.

   d. ☐ Other (specify):


10. ☐ The bankruptcy case was filed in bad faith:

    a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

    b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

    c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

    d. ☐ Other (specify):


11. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder or defraud creditors that involved:

    a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page of facts establishing the scheme.

    b. ☐ Multiple bankruptcy cases affecting the Property include:
    (1) Case name: _____
        Chapter: _____   Case number: _____
        Date filed: _____   Date discharged: _____   Date dismissed: _____
        Relief from stay regarding the Property ☐ was ☐ was not granted.

    (2) Case name: _____
        Chapter: _____   Case number: _____
        Date filed: _____   Date discharged: _____   Date dismissed: _____
        Relief from stay regarding the Property ☐ was ☐ was not granted.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                        Page 9                          F 4001-1.RFS.UD.MOTION

(3) Case name: _____

Chapter: _____    Case number: _____

Date filed: _____    Date discharged: _____    Date dismissed: _____

Relief from stay regarding the Property ☐ was  ☐ was not  granted.

☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for additional facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

12. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☐ These actions were taken before Movant knew the bankruptcy petition was filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 08/13/2025 | Lauren Somma | *signature* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 10                          F 4001-1.RFS.UD.MOTION

ORIGINAL

**\*\*This document was electronically submitted
to San Luis Obispo County for recording\*\***

**2018015654**
Tommy Gong
San Luis Obispo - County Clerk-Recorder
04/20/2018 08:00 AM

Recorded at the request of:
FIRST AMERICAN TITLE COMPANY

Titles: 1   Pages: 2

Fees: $17.00
Taxes: $2420.00
Total: $2437.00

**RECORDING REQUESTED BY:**
First American Title Company

**MAIL TAX STATEMENT
AND WHEN RECORDED MAIL DOCUMENT TO:**
Lamson-Elliott Investments, LLC
3940 Broad Street, #7391
San Luis Obispo, CA 93401

**PCOR FILED**

_____ Space Above This Line for Recorder's Use Only _____

A.P.N.: 002-509-009 , 011

File No.: 4009-5662607 (LB)

## GRANT DEED

The Undersigned Grantor(s) Declare(s): DOCUMENTARY TRANSFER TAX $2,420.00; CITY TRANSFER TAX $;
SURVEY MONUMENT FEE $
[ X ]   computed on the consideration or full value of property conveyed, OR
[ ]   computed on the consideration or full value less value of liens and/or encumbrances remaining at time of sale,
[ ]   unincorporated area;   [ X ] City of San Luis Obispo, and
EXEMPT FROM BUILDING HOMES AND JOBS ACTS FEE PER GOVERNMENT CODE 27388.1(a)(2)

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **3rd Ave Limited Partnership,
which acquired title as JFM Limited Partnership, a California limited partnership**

hereby GRANTS to **Lamson-Elliott Investments, LLC, a California limited liability company**

the following described property in the City of **San Luis Obispo**, County of **San Luis Obispo**, State
of **California**:

LOTS 1 AND 2 IN BLOCK 120 OF OLD MISSION ORCHARD AND HIGUERA TRACT, IN THE CITY
OF SAN LUIS OBISPO, COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING
TO MAP FILED FOR RECORD MARCH 13, 1896 IN BOOK B, PAGE 37 OF MAPS, IN THE OFFICE
OF THE COUNTY RECORDER OF SAID COUNTY.

Mail Tax Statements To:  SAME AS ABOVE

Grant Deed - continued

Date: **04/16/2018**

A.P.N.: 002-509-009, .011

File No.: 4009-5662607 (LB)

Dated:  April 16, 2018

3rd Ave Limited Partnership, which acquired title
as JFM Limited Partnership, a California limited
partnership

By:_____
     Name: Chris McKiernan
     Title: General Partner

---

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.

---

STATE OF  _CALIFORNIA_                          )SS

COUNTY OF  _SAN LUIS OBISPO_        )

On  _April 16, 2018_                  before me,  _L.A. BERTRAND_          , Notary Public, personally appeared
**CHRIS MCKIERNAN**
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                                  This area for official notarial seal.

_____
Notary Signature

L.A. BERTRAND
Notary Public – California
San Luis Obispo County
Commission # 2210707
My Comm. Expires Sep 16, 2021

### FIFTH LEASE AMENDMENT

This is the fifth lease amendment to the lease dated January 7, 2009 **between JFM Limited Partnership as Lessor and Hospice Partners Inc. dba Wilshire Hospice** for property at 445 Higuera Street, containing a building of approximately 5,100 square feet, San Luis Obispo Ca. 93401.

The lease is hereby amended as follows:

The following paragraphs of the lease are hereby amended as follows:

**Parties to lease:** Lessor is now Lamson-Elliott Investments, LLC a California Limited Liability Company.

1. **Term:** The term of the lease is hereby extended until June 30, 2027.

2. **Rent:** Monthly rent shall be as follows:

    | | |
    |---|---|
    | July 2022 -June 2023 | $9,700/month |
    | July 2023-June 2024 | $9,900/month |
    | July 2024-June 2025 | $10,100/month |
    | July 2025-June 2026 | $10,300/month |
    | July 2026-June 2027 | $10,500/month |

4    **Cost of Living Increase** is hereby deleted.

**27. Notices:** Notices to Lessor shall be by email to Sharon Goupil at the following address: srgoupil@gmail.com.

**Addendum-Paragraph 10:** Lessee's maximum annual cost for maintaining and repairing the HVAC system shall be $3,000. Commencing July 2022 annually is defined as from July to June of the following year. For example, the first annual year will be from July 2022 through June of 2023.

Lessee to retain Wighton's Plumbing, Heating and Air Conditioning services as of July 1, 2022 to provide quarterly service to the HVAC units and the cost of the service shall be credited against lessee's maximum $3,000 obligation. Lessee will provide copies evidence of HVAC expenses to Lessor.

Lessor shall be responsible for and costs over $3,000 for repairs and service of the HVAC units.

Lessee to provide lessor reimbursement of $2,660 by June 30, 2022 for past HVAC invoices which were previously sent to lessee.

**Floor Covering Allowance:** Lessor will provide lessee an allowance of 50% of the cost of new floor covering(s) with a maximum contribution of $12,000. Lessor to approve the proposed replacement(s) and approval will not be unreasonably withheld. Lessee is to be responsible to contract for and supervise installation of new floor covering(s).

**Trash Area Improvements:** Owner will provide an allowance of 50% of the cost of improvements to the trash area with a maximum contribution of $2,000. Lessee to be responsible to contract for and supervise trash area improvements.

All other terms and conditions shall remain the same.

**LESSEE: Hospice Partners, Inc. dba Wilshire Hospice by:**

_____  Title____President/CEO____  Date____5/10/2022____

**LESSOR: Lamson-Elliott Investments, LLC by:**

_____  Date____5/10/2022____
Sharon Goupil, Member

## FOURTH LEASE AMENDMENT

This is the Fourth Lease Amendment to the lease dated January 7, 2009 between JFM Limited Partnership as Lessor and Hospice Partners Inc., dba Wilshire Hospice for property at 445 Higuera Street, San Luis Obispo, California, 93401 containing a building of approximately 5,000 square feet.

Transferred and assigned to Lamson-Elliott Investments, LLC a California limited liability company as of April 20, 2018.

The lease is hereby amended as follows:

**Term:** The term of the lease is hereby extended until June 30, 2022.

**Monthly Rent:**

| | |
|---|---|
| July 2017 through April 2020 | $9,250 / Month |
| May 2020 through June 2020 | $9,250 / Month – Deferred (COVID-19) |
| July 2020 through December 2020 | $12,583.33 / Monthly + Deferral Amt. Due |
| | ($9,500 + 3083.33) |
| January 2021 through June 2022 | $9,500 / Month |

**Brokerage Fee:** Owner shall pay a professional leasing fee to Anderson Commercial Real Estate of 2% of the gross annual rental. The fee shall be paid on an annual basis in July of each year during the renewal period.

All other terms and conditions shall remain the same.

**LESSEE: Hospice Partners, Inc. dba Wilshire Hospice by:**

Date 4/15/2020

Dave Oliver, VP Human Resources

**LESSOR: Lamson-Elliott Investments, LLC**

Date 4/16/2020

Sharon R. Goupil, Member

## ASSIGNMENT OF LESSOR'S INTEREST IN LEASE

File No: **4009-5662607 (LB)**

Date: **April 16, 2018**

**FOR VALUE RECEIVED,** the undersigned Assignor,

**3rd Ave Limited Partnership, which acquired title as JFM Limited Partnership, a California limited partnership**

transfers and assigns to

**Lamson-Elliott Investments, LLC, a California limited liability company**

all right, title and interest as Lessor, and the entire Lessor's interest in and to any and all Leases   covering that certain real property commonly known as **445 Higuera Street, San Luis Obispo, CA 93401** and more particularly described in "Exhibit A", attached hereto and made a part hereof.

Dated:_____April 20, 2018_____

ASSIGNOR:

3rd Ave Limited Partnership, which acquired title
as JFM Limited Partnership, a California limited
partnership

By:_____
    Name: Chris McKiernan
    Title: General Partner

Page 1 of 2

## EXHIBIT A

LOTS 1 AND 2 IN BLOCK 120 OF OLD MISSION ORCHARD AND HIGUERA TRACT, IN THE CITY OF SAN LUIS OBISPO, COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO MAP FILED FOR RECORD MARCH 13, 1896 IN BOOK B, PAGE 37 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 002-509-009

## THIRD LEASE AMENDMENT

This is the third lease amendment to the lease dated January 7, 2009 between **JFM Limited Partnership as lessor and Hospice Partners Inc., dba Wilshire Hospice** for property at **445 Higuera Street**, San Luis Obispo Ca. 93401 containing a building of approximately 5,000 square feet.

The lease is hereby amended as follows:

**TERM:** The term of the lease is hereby extended until June 30, 2022.

**MONTHLY RENT:** Monthly rent shall be as follows:

| | |
|---|---|
| July 2017 through June 2020 | $9,250/month |
| July 2020 through June 2022 | $9,500/month |

**BROKERAGE FEE:** Owner shall pay a professional leasing fee to Anderson Commercial Real Estate of 2% of the gross annual rental. The fee shall be paid on an annual basis in July of each year during the renewal period.

All other terms and conditions shall remain the same.

**Lessee: Hospice Partners, Inc. dba Wilshire Hospice by:**

_____   Date ___04/24/2017___

**Lessor: JFM Limited Partnership by:**

_____   Date ___4/2'/17___

## SECOND LEASE AMENDMENT

This is the second lease addendum to the lease dated January 7, 2009 between **JFM Limited Partnership as lessor and Hospice Partners of the Central Coast as lessee** for property at **445 Higuera Street**, San Luis Obispo Ca. 93401 containing a building of approximately 5000 square feet. The parties acknowledge the proper name of lessee is Hospice Partners, Inc., dba Wilshire Hospice and that party is the lessee.

The lease is hereby amended as follows:

1. **Term:** The terms of the lease is hereby extended until June 30, 2017.

2. **Rent:**  Monthly rent from July 2014 through June 2017 shall be $8,900 per month. There shall be no cost of living increase during this lease extension.

3. **Right to terminate lease:** The parties agree and acknowledge that lessee's right to terminate the lease was previously terminated by the first lease addendum and lessee has no right to terminate this lease.

4. **Brokerage fees:** Brokerage fees shall be paid to Anderson Commercial Real Estate in lieu of Senn-Lee and Associates since Charles Senn is associated with Anderson Commercial Real Estate

All other terms and conditions shall remain the same.

**LESSEE: Hospice Partners, Inc., dba Wilshire Hospice by:**

_____    Date: _____12/27/13_____

**LESSOR: JFM Limited Partnership**

_____    Date: _____12/17/13_____

# FIRST LEASE AMENDMENT

This the first amendment to the lease dated January 2009 between Hospice Partners of the Central Coast, Lessee, and James McKiernan, Lessor, for the premises at 445 Higuera Street, San Luis Obispo Ca. 93401.

The lease is hereby amended as follows:

**Paragraph 2 Rental Rate-** As of January 2012 the monthly rent shall be $8500 per month and this rate shall continue to the termination of the lease which is June 30, 2014.

**Right of termination**: The right of lessee to terminate the lease is hereby cancelled.

**Hospice Partners of the Central Coast:**

By:_____Title_____Date_____

**James McKiernan**

_____ Date_____

## COMMERCIAL LEASE AGREEMENT

Received from Hospice Partners of the Central Coast, hereinafter referred to as "Lessee", the sum of $11,700 Dollars as a deposit which, upon acceptance of this lease, shall belong to Lessor and shall be applied as follows:

Rent for the period of April and May 2009 in the amount of                    $11,700

Lessee hereby leases from Lessor, James McKiernan the premises situated in the City of San Luis Obispo, County of San Luis Obispo, and State of California, described as follows: approximately 5000 square feet of building located at 445 Higuera Street, upon the following terms and conditions:

1) **TERM:** The term hereof shall commence on January 1, 2009 and shall terminate on June 30, 2014.

2) **RENT:** The rent for the term shall be as follows:  See Addendum payable in advance. Checks shall be made payable to James McKiernan by US mail to 21 Santa Rosa Street San Luis Obispo Ca. 93405.  All rents shall be due and payable on the first day of each month and shall be considered late after the tenth day of each month.  A late fee of $100.00 plus interest at 1% per month of the total amount due shall be charged for any rents not received in a timely manner.  Tenant agrees to pay $50.00 for each dishonored bank check.  The late charge period is not a grace period, and Lessor is entitled to make written demand for any rent if not paid when due.  Any unpaid balances remaining after termination of occupancy are subject to the lesser of 1.5% interest per month or the maximum amount allowed by law.

3) **OPTION TO EXTEND:**  Provided Lessee is not in default of this lease, Lessee shall have the option to renew this lease for 2 additional terms of 3 years each upon the same terms and conditions as set forth herein. Options to be exercised by providing Lessor with at least 180 days advance written notice prior to term expiration. Rental rate during option periods is defined in the addendum. Lessee's right(s) of renewal shall be subject to approval by Lessor and Lessor shall notify lessee at least 6 months in advance if Lessor will not approve the renewal by Lessee.

4) **COST OF LIVING INCREASE:**  The rent provided for in Section 2 shall be adjusted annually on the anniversary date as defined in the addendum.

5) **MODIFICATIONS:** In consideration for receiving the first three months rent free, Lessee agrees to make any required modifications at its expense except those defined as Lessor obligations in the addendum.  All modifications are to be made in compliance with applicable building codes, and Lessee is responsible for obtaining any necessary permits. All modifications shall remain the property of Lessor upon termination of Lessee's occupancy except trade fixtures of the Lessee.

6) **USE:** Operation of a retail store with emphasis on used goods and for no other purpose without the prior written consent of Lessor which shall not be unreasonably withheld.

7) **USES PROHIBITED:**  Lessee shall not use any portion of the premises for purposes other than those specified hereinabove, and no use shall be made or permitted to be made upon the premises, nor acts done, which will increase the existing rate of insurance upon the property, or cause cancellation of insurance policies covering said property.

8) **ASSIGNMENT AND SUBLETTING:**  Lessee shall not assign this lease or sublet any portion of the premises without the prior written consent of Lessor, which shall not be unreasonably withheld.  Any such assignment or subletting without consent shall be void, and, at the option of the Lessor, may terminate this Lease.

9) **ORDINANCES AND STATUTES:** Lessee shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force or which may hereafter be in force, pertaining to the premises, occasioned by or affecting the particular manner of use thereof by Lessee. The commencement or pendency of any state or federal court abatement proceeding affecting the use of the premises shall, at the option of the Lessor, be deemed a breach hereof.

10) **MAINTENANCE, REPAIRS AND ALTERATIONS:** Lessee acknowledges that the premises are in good condition and repair, unless otherwise indicated in the addendum. Lessee shall, at its own expense and at all times, maintain the premises in good and safe condition, including plate glass, electrical wiring, plumbing and heating installations and any other systems or equipment upon the premises and shall surrender the same, at termination hereof, in as good condition as received, normal wear and tear excepted, however Lessee shall have thirty (30) days from mutual lease execution to notify Lessor in writing of any deficiencies in connection with the HVAC, electrical or plumbing systems servicing the premises. In the event of any deficiencies set forth in Lessee's written notice, Lessor shall, at its cost and expense, repair said deficiencies within ten (10) days of Lessee's notice. Thereafter, Lessee shall be responsible for all repairs required, excepting the roof, exterior walls and structural foundations which shall be maintained by Lessor. Lessee shall maintain in good condition such portions adjacent to the premises, such as sidewalks, driveways, lawns and shrubbery. No improvement or alteration of the premises shall be made without the prior written consent of the Lessor however lessor acknowledges that lessee will be making improvements and modification to the building which will include removal of walls, cosmetic improvements and other necessary modifications and hereby approves same. Prior to the commencement of any substantial repair, improvement or alteration, Lessee shall give Lessor at least ten (10) days written notice in order that Lessor may post appropriate notices to avoid any liability for liens. Lessee shall not commit any waste upon the premises, or any nuisance or act which may disturb the quiet enjoyment of any neighboring tenants. Further, Lessee shall be responsible for any and all upgrades required for Lessee's use of space, including but not limited to, electrical and telephone service.

11) **ENTRY AND INSPECTION:** Lessee shall permit Lessor or Lessor's agents to enter upon the premises at reasonable times and upon reasonable notice, for the purpose of inspecting the same, and will permit Lessor at any time within ninety (90) days prior to the expiration of this lease, to place upon the premises any usual "For Lease" signs, and permit persons desiring to lease the same to inspect the premises thereafter.

12) **INDEMNIFICATION OF LESSOR:** Excluding Lessor's gross negligence or willful misconduct, Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof, and Lessee agrees to hold Lessor harmless from any claims for damages.

13) **LESSEE'S INSURANCE:** Lessee, at its sole cost and expense shall maintain during the term of this Lease a standard tenant's policy which provides public and personal liability and personal property insurance with a single combined liability limit of one million ($1,000,000.00) dollars per occurrence, and property damage limits of not less than one million ($1,000,000.00) dollars, with a two million ($2,000,000.00) dollar aggregate, insuring against all liability of Lessee and its authorized representatives arising out of and in connection with Lessee's use or occupancy of the Premises. Both public liability insurance and property damage insurance shall insure performance by Lessee of the indemnity provisions in Paragraph 12, but the limits of such insurance shall not, however, limit the liability of Lessee hereunder. Landlord shall be named as additional insured, and the policy shall contain cross liability endorsements. Lessee shall provide Lessor with an Additional Insured Lessor Endorsement naming James McKiernan as additional insured. The additional insured endorsement will be worded as follows:

Name of Person or Organization: (Additional Insured):

14) **LESSORS INSURANCE:** Lessor shall maintain hazard insurance covering one hundred percent replacement cost of the improvements throughout the lease term. Lessor's insurance will not insure Lessee's personal property or leasehold improvements.

2

15) SUBROGATION: To the maximum extent permitted by the insurance policies, which may be owned by Lessee and Lessor, Lessee and Lessor, for the benefit of each other, waive any and all rights of subrogation which might otherwise exist.

16) UTILITES/OPERATING EXPENSES: Lessee shall be responsible for the payment of all utilities, including water and sewer, gas, electricity, security lighting, heat, and other services delivered to the premises. Lessor shall pay real estate taxes, building and flood insurance.

17) SIGNS: Lessee shall have the right to install new signage at Lessee's expense subject to the approval of Lessor (which consent shall not be unreasonably withheld) and the City of San Luis Obispo. Use of existing exterior sign panels is granted to lessee.

18) PARKING: Lessee shall be allocated the parking included with the building, however 4 spaces shall be provided for the tenant(s) in the adjacent property on Carmel Street and the location the 4 spaces shall be agreed between lessor and lessee and may be appropriately marked by Lessee.

19) ABANDONMENT OF PREMISES: Lessee shall not vacate or abandon the premises at any time during the term hereof, and if Lessee shall abandon or vacate the premises, or be dispossessed by process of law, or otherwise, any personal property belonging to Lessee left upon the premises shall be deemed to be abandoned, at the option of Lessor.

20) CONDEMNATION: If any part of the premises shall be taken or condemned for public use, and a part thereof remains which is susceptible of occupation hereunder, this Lease shall, as to the part taken, terminate as of the date the condemnor acquires possession, and thereafter Lessee shall be required to pay such proportion of the rent for the remaining term as the value of the premises remaining bears to the total value of the premises at the date of condemnation; provided however, that Lessor may at his option, terminate this Lease as of the date the condemnor acquires possession. In the event that the demised premises are condemned in whole, or that such portion is condemned that the remainder is not susceptible for use hereunder, this lease shall terminate upon the date upon which the condemnor acquires possession. All sums which may be payable on account of any condemnation shall belong to the Lessor, and Lessee shall not be entitled to any part thereof; provided however, the Lessee shall be entitled to retain any amount awarded him for his trade fixtures or moving expenses.

21) TRADE FIXTURES: Any and all improvements made to the premises during the term hereof shall belong to the Lessor, except trade fixtures of the Lessee. Lessee may, upon termination hereof, remove all his trade fixtures, but shall repair or pay for all repairs necessary for damages to the premises occasioned by removal.

22) DESTRUCTION OF PREMISES: In the event of a partial destruction of the premises during the term hereof, from any cause, Lessor shall forthwith repair the same, provided that such repairs can be made within one hundred twenty (120) days under existing governmental laws and regulations, but such partial destruction shall not terminate this Lease, except that Lessee shall be entitled to a proportionate reduction of rent which such repairs are being made, based upon the extent to which the making of such repairs shall interfere with the business of Lessee on the premises. If such repairs cannot be made within said one hundred twenty (120) days, Lessor, at his option, may make the same within a reasonable time, the Lease continuing in effect with the rent proportionately abated as aforesaid, and in the event that Lessor shall not elect to make such repairs which cannot be made within one hundred twenty (120) days, this Lease may be terminated at the option of either party. In the event that the building in which the demised premises may be situated is destroyed to an extent of not less than one-third of the replacement costs thereof, Lessor may elect to terminate this Lease. A total destruction of the building in which the premises may be situated shall terminate this Lease.

23) HAZARDOUS MATERIALS: Lessee shall not use, store, or dispose of any hazardous substances upon the premises, except use and storage of such substances if they are customarily used in Lessee's business, and such use and storage complies with all environmental laws. Hazardous substances mean any hazard, waste, substance, or toxic materials regulated under any environmental laws or regulations applicable to the property.

3

24) **INSOLVENCY:** In the event a receiver is appointed to take over the business of Lessee, or in the event Lessee makes a general assignment for the benefit of creditors, or Lessee takes or suffers any action under any insolvency or bankruptcy act, the same shall constitute a breach of this Lease by Lessee only if Lessee is delinquent in payment of rent or other monetary obligations.

25) **REMEDIES OF LESSOR ON DEFAULT:** In the event of any breach of this Lease by Lessee, Lessor may, at its option, terminate the Lease and recover from Lessee: (a) the worth at the time of award of the unpaid rent which was earned at the time of termination; (b) the worth at the time of award of the amount by which the unpaid rent would have been earned after termination until the time of the award exceeds the amount of such rental loss that the Lessee proves could have been reasonable avoided; (c ) the worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that Lessee proves could be reasonably avoided; and (d) any other amount necessary to compensate Lessor for all detriment proximately caused by Lessee's failure to perform his obligations under the lease or which in the ordinary course of things would be likely to result therefrom.

Lessor may, in the alternative, continue this Lease in effect, as long as Lessor does not terminate Lessee's right to possession, and Lessor may enforce all his rights and remedies under the Lease, including the right to recover the rent as it becomes due under the Lease. If said breach of Lease continues, Lessor may, at any time thereafter, elect to terminate the Lease. Nothing contained herein shall be deemed to limit any other rights or remedies which Lessor may have. Notwithstanding anything to the contrary contained herein, Lessee shall have ten (10) business days to cure a default after written notice from Lessor.

26) **WAIVER:** No failure of Lessor to enforce any term hereof shall be deemed to be a waiver.

27) **NOTICES:** Any notice which either party may or is required to give, shall be given by mailing the same, postage prepaid, to Lessee at the premises, or Lessor at the address shown below, or at such other place as may be designated by the parties from time to time.

28) **HOLDING OVER:** Any holding over after the expiration of this Lease, with the consent of the Lessor, shall be construed as a month - to - month tenancy at a rental rate of $10,000 per month otherwise in accordance with the terms hereof, as applicable.

29) **TIME:** Time is of the essence of this Lease.

30) **HEIRS, ASSIGNS, SUCCESSORS:** This Lease is binding upon and inures to the benefit of the heirs, assigns and successors in interest to the parties.

31) **LESSOR'S LIABILITY:** The term "Lessor" as used in this Section, shall mean only the owner of the real property or a Lessee's interest in a ground lease of the premises. In the event of any transfer of such title or interest, the Lessor named herein (or the grantor in the case of any subsequent transfers) shall be relieved of all liability related to Lessor's obligations to be performed after such transfer. Provided, however, that any funds in the hands of Lessor or Grantor at the time of such transfer shall be delivered to Grantee. Lessor's aforesaid obligations shall be binding upon Lessor's successors and assigns only during their respective periods of ownership.

32) **ESTOPPEL CERTIFICATE:** (a) Lessee shall at any time upon not less than ten (10) days' prior written notice from Lessor execute, acknowledge and deliver to Lessor a statement in writing [1] certifying that this Lease is unmodified and in full force and effect (or, if modified, stating the nature of such modification and certifying that this Lease, as so modified, is in full force and effect), the amount of any security deposit, and the date to which the rent and other charges are paid in advance, if any; and [2] acknowledging that there are not, to Lessee's knowledge, any uncured defaults on the part of Lessor hereunder, or specifying such defaults if any are claimed. Any such statement may be conclusively relied upon by any prospective purchaser or encumbrancer to the premises. (b) At Lessor's option, Lessee's failure to deliver such statement within such time shall be a material breach of this Lease or shall be conclusive upon Lessee [1] that this Lease is in full force and effect, without modification except as may be represented by Lessor, [2] that there are no uncured

4

defaults in Lessor's performance, and [3] that not more than one month's rent has been paid in advance or such failure may be considered by Lessor as a default under this Lease.    (c) If Lessor desires to finance, refinance or sell the premises, or any part thereof, Lessee hereby agrees to deliver to any lender or purchaser designated by Lessor such financial statements of Lessee as may be reasonably required by such lender or purchaser.    Such statements shall include the past three years' financial statements of Lessee.  All such financial statements shall be received by Lessor and such lender or purchaser in confidence and shall be used only for the purposes herein set forth.

33) BROKERAGE FEES:    Lessor shall pay a professional brokerage fee to Senn – Lee & Associates Commercial Real Estate in the amount set forth in a separate agreement and as defined in the letter of intent dated December 8, 2008.

34) SALE OF BUILDING: In the event Lessor elects to sell the building during this lease Lessor shall first offer the building to Lessee at the price it will be offered on the open market.

ENTIRE AGREEMENT:    The foregoing and attached addendum constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties. The following addendum, titled "MEDIATION AND ARBITRATION AGREEMENT" has been made a part of this lease before the parties execution hereof.

The undersigned Lessee hereby acknowledges receipt of a copy hereof:
The terms of this Lease are hereby agreed and the individual executing this lease has authority to execute on behalf of Lessee:

LESSEE: Hospice partners of the Central Coast

By: _____        Title: _____

Date: _____

The undersigned Lessor hereby acknowledges receipt of a copy hereof:
The terms of this lease are hereby agreed and the individual executing this lease has authority to execute on behalf of Lessor:

LESSOR: James McKiernan

By: _____        Title: _____

Date: _____

5

## LEASE ADDENDUM

This is a lease addendum to the lease between James McKiernan and Hospice Partners of the Central Coast for the premises at 445 Higuera Street, San Luis Obispo Ca. 93401

**Paragraph 2--Rent Schedule:**

| | |
|---|---|
| January-March 2009 | No Rent |
| April-August 2009 | $5850/month |
| September-December 2009 | $6850/month |
| January-June 2010 | $7350/month |
| July 2010-June 2011 | $8350/month |
| July 2011-June 2012 | $8684/month |
| July 2012-June 2013 | $9031/month |
| July 2013-June 2014 | $9392/month |

**Paragraph 3--Rental rate during renewal periods**

The rental rate during the renewal periods shall be negotiated at market rent. In the event the parties are unable to agree on market rent an MAI appraiser whose primary place of business is in San Luis Obispo shall be retained by both parties to do a rent survey and establish the market rent for the premises and the cost of the appraiser shall be split 50/50 between the parties. In no event will the rent exceed $10,000 for the first option period and $12,000 during the second option period.

**Right to terminate the lease**

Lessee shall have the right to terminate the lease on July 1, 2011 and July 1 2012 by providing lessor 6 months or more advance notice of termination of the lease.

**Paragraphs 5 & 10--Building Condition and obligations of lessor**

Lessor shall at lessor's sole expense cause the electrical, plumbing, and HVAC systems to be in good operating condition and shall cause the HVAC system to be serviced by January 31, 2009

Lessee shall cause the parking lot to restriped and resealed not later than May 31 2009 and may deduct the cost thereof from its rent and the maximum deduction shall be $2000. Lessee shall provide lessor with a copy of the bill for costs of improving the parking lot.

**Paragraph 10--HVAC Maintenance**

Lessee's maximum annual cost for maintaining the HVAC system shall be $1500. Any additional cost of maintaining or replacing the system shall be the obligation of lessor.

**Building plans**
Lessor shall provide lessee a copy of all building plans (including electrical and mechanical) for the property in his possession.

**Due Diligence period**
Lessee shall have until December 31, 2009 to determine that the property is satisfactory for the intended use and that necessary improvements can be completed at a cost satisfactory to lessee. Lessee may use necessary consultants to assist lessee in this determination.

Lessor

Lessee

## MEDIATION AND ARBITRATION AGREEMENT

Standard Lease Addendum

Dated: JANUARY 1, 2009

By and between (lessor): JAMES McKIERNAN

(Lessee): HOSPICE PARTNERS OF THE CENTRAL COAST

Address of Premises: 445 HIGUERA ST., SAN LUIS OBISPO, CA

In the event of a fee dispute between the Lessor and Lessee (each a "Party and together the "Parties") arising out of, or related to, this Lease ("Dispute"), the Parties agree to resolve such Dispute pursuant to the procedures set forth in this Mediation and Arbitration Agreement ("Agreement").

**Informal Resolution Process**

In the event of a Dispute, the claiming Party ("Claiming Party") shall notify the responding Party ("Responding Party") in writing of any and all fee issues arising out of, or related to the Lease ("Dispute Notice"). The Responding Party shall respond to the Dispute Notice in writing ("Response") within five (5) days following receipt thereof.  The Claiming Party shall include in this Dispute Notice and the Responding Party shall include as the Response, the name of such Party's representative vested with full and final authorization to resolve the Dispute ("Decision Maker").

If the Dispute is not resolved informally within fifteen (15) days from the date of the Dispute Notice, the Dispute shall be submitted to non-binding mediation ("Mediation") in accordance with the procedures set forth below.

**Non-Binding Mediation Process**

On or before the twentieth (20th) calendar day following the date of the Dispute Notice, the Parties shall select a mutually agreed upon mediator from Judicial Arbitration & Mediation Services, Inc. ("JAMS") or any other mediation organization. If the Parties are unable to mutually agree upon a mediator, then a mediator selected by the Claiming Party and a mediator Selected by the Responding Party shall select a third mediator to conduct the Mediation. In any event, the final selection of a mediator (the "Mediator") shall be accomplished no later than thirty (30) days from the date of the Dispute Notice.  Within three (3) days following the selection of the Mediator, the Parties and the Mediator shall designate the time, date and forum to hold the Mediation   The Parties agree that the Mediation shall commence prior to the seventh (7th) calendar day following the date of the Dispute Notice.

During the Mediation, each Party shall be represented by its respective Decision Maker who may enlist additional persons to offer statements and evidence as deemed reasonably necessary. The Parties, in consultation with the Mediator, shall agree upon procedures and the format for Mediation including the time for submitting a pre-mediation memorandum.  The Mediator is authorized to conduct both joint sessions and separate private caucuses with the Parties.

Each Party shall pay one half of the Mediator's fee, unless the Parties agree otherwise in writing. The Mediator shall be disqualified as a witness, consultant, expert, or counsel of either Party with respect to the Dispute and any related matters

In the event the mediation process does not resolve the Dispute, the parties agree to submit the Dispute to binding arbitration ("Arbitration") pursuant to the procedures set forth below.

Binding Arbitration Process

Within twenty (20) calendar days following the conclusion of an unsuccessful Mediation, the Parties shall select a mutually agreed upon arbitrator from JAMS, its successor organization or another mutually agreed source. If the Parties are unable to mutually agree upon an arbitrator, then the arbitrator selected by the Claiming Party and an arbitrator selected from JAMS by the Responding Party shall each select a third arbitrator who shall then serve as the sole arbitrator to conduct the Arbitration. In any event, the arbitrator (the "Arbitrator") shall be selected no later than thirty (30) calendar days from the conclusion of the Mediation.

Within three (3) days following the selection of the Arbitrator, the Parties and the Arbitrator shall designate the hour, date and location to hold the Arbitration. The Parties agree that the Arbitration shall commence prior to the sixtieth (60th) calendar day following the conclusion of the Mediation.

The Parties agree that the Arbitration shall be conducted in accordance with the commercial arbitration rules of the American Arbitration Association, unless mutually agreed otherwise, and judgment by the Arbitrator may be entered in a court having jurisdiction.

A. Disputes Excluded from Arbitration

The following claims, disputes or disagreements under this Lease are expressly excluded from the Arbitration procedures set forth herein: 1. Disputes for which a different resolution determination is specifically set forth in this Lease; 2. All claims by either party which (a) seek a legal or equitable remedy other than enforcement or determination of rights under this Lease, or (b) are primarily founded upon matters of fraud, willful misconduct, bad faith or any other allegations of tortious action, and seek the award of punitive or exemplary damages, and 3. Claims relating to (a) Lessee's exercise of any unlawful detainer rights pursuant to applicable law or (b) rights or remedies used by Lessee to gain possession of the Premises or terminate Lessee's right of possession to the Premises, all of which disputes shall be resolved by suit filed in the applicable court of jurisdiction, the decision of which court shall be subject to appeal pursuant to applicable law.

B.    Arbitration Procedure

1.    Pre-Hearing Actions. The Arbitrator shall schedule a pre-hearing conference to resolve procedural matters, arrange for the exchange of information, obtain stipulations, and narrow the issues. The scope and duration of discovery will be within the discretion of the Arbitrator, as agreed by the Agreement. The Arbitrator shall have the discretion to order a pre-hearing exchange of information by the Parties, including, without limitation, production of requested documents, exchange of summaries of testimony of proposed witnesses, and examination by deposition of parties and third-party witnesses. This discretion shall be exercised in favor of discovery reasonable under the circumstances. The Arbitrator shall issue subpoenas and subpoenas duces tecum as provided for in the applicable statutes or case law.

2.    The Decision. The arbitration shall be conducted in the city in which, or near to which, the Premises are located at a reasonably convenient site.

Any Party may be represented by counsel in rendering a decision, the Arbitrator shall determine the rights and obligations of the Parties according to the substantive laws and the terms and provisions of this Lease. The decision shall be conclusive and binding, and it may thereafter be confirmed as a judgment by

the venue of applicable jurisdiction, subject only to challenge on the grounds set forth in the applicable statutory or case law. The Arbitrator may award costs, including without limitation, Arbitrator's fees and costs, attorneys' fees, and expert and witness costs, to the prevailing party, if any, as determined by the Arbitrator in his discretion.

Whenever a matter which has been submitted to Arbitration involves a dispute as to whether or not a particular act or omission (other than a failure to pay money) constitutes a default under this Lease, the time to commence or cease such action shall be tolled from the date of the Dispute Notice through and until the date the Arbitrator renders his or her decision. Provided, however, that this provision shall NOT apply in the event that the Arbitrator determines that the Dispute Notice was prepared in bad faith.

Whenever a Dispute arises between the Parties concerning whether or not the failure to make a payment of money constitutes a default, the service of a Dispute Notice shall NOT toll the time period in which to pay the money. The Party allegedly obligated to pay the money may, however, elect to pay the money "under protest" by accompanying said payment with a written statement setting forth the reasons for such protest. If thereafter, the Arbitrator determines that the Party who received said money was not entitled to such payment, said money shall be promptly returned to the Party who paid such money under protest together with interest thereon as set forth in the Lease. If a Party makes a payment "under protest" but no Dispute Notice is filed within thirty (30) days, then such protest shall be deemed waived.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1401 Higuera Street
San Luis Obispo, CA 93401

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l) (with supporting declarations) (UNLAWFUL DETAINER)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __8/15/25__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Paul F Ready, Attorney for Debtor - becky@farmerandready.com
United States Trustee (ND)  - ustpregion16.nd.ecf@usdoj.gov
Nancy J Zamora (TR), Chapter 7 Trustee - zamora3@aol.com, nzamora@ecf.axosfs.com

☐ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**:
On (*date*) __8/15/25__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Debtor
Hospice Partners, Inc.
P.O. Box 409
Nipomo, CA 93444

☐ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| __8/15/25__ | __Marissa Rowland__ | __/s/ Marissa Rowland__ |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 11                                    **F 4001-1.RFS.UD.MOTION**