Peter J. Mastan (SBN 190250)
E-mail: *peter.mastan@dinsmore.com*
Lovee D. Sarenas (SBN 204361)
E-mail: *lovee.sarenas@dinsmore.com*
**DINSMORE & SHOHL LLP**
550 S. Hope Street, Suite 2800
Los Angeles, CA 90071
Telephone: (213) 335-7737
Facsimile: (213) 335-7740

Counsel to Nancy Zamora, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION**

| | |
|---|---|
| In re: | Case No.: 9:25-bk-11033-RC |
| HOSPICE PARTNERS, INC., [1] | Chapter 7 |
| Debtor. | **TRUSTEE'S MOTION FOR THE ENTRY OF AN ORDER:** |
| | **(A) APPROVING SALE OF PURCHASED ASSETS FREE AND CLEAR OF ALL INTERESTS;** |
| | **(B) APPROVING OVERBID PROCEDURES;** |
| | **(C) GRANTING 11 U.S.C. § 363(m) PROTECTION TO BUYER;** |
| | **(D) REJECTING UNEXPIRED LEASE PURSUANT TO 11 U.S.C. § 365(a) AS OF THE PETITION DATE; AND** |
| | **(E) APPROVING THE STIPULATION BETWEEN THE U.S. SMALL BUSINESS ADMINISTRATION AND THE TRUSTEE CONCERNING THE LIEN ON PURCHASED ASSETS;** |

[1] The following related cases are affiliated with the Debtor: *Wilshire Connected Care, Inc.* (9:25-bk-11028-RC)*; Wilshire Management Services, Inc.* (9:25-bk-11029-RC); *Wilshire Community Services, Inc.* (9:25-bk-11031-RC); *and Wilshire Health & Community Services, Inc.* (9:25-bk-11032-RC).

1

#65138168v2

**MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS AND EXHIBITS IN SUPPORT THEREOF**

**[11 U.S.C. §§ 105, 363, 365, 502, 506; FRBP 2002, 6004, 6006, and 9013 and related Local Bankruptcy Rules]**

Date: December 2, 2025
Time: 1:00 p.m.
Judge: Hon. Ronald Clifford III
Place: Courtroom 201
　　　　1415 State Street
　　　　Santa Barbara, California 93101-2511

Nancy Zamora, the duly-appointed Chapter 7 Trustee ("Trustee") in the above-entitled Chapter 7 bankruptcy case of the debtor Hospice Partners, Inc. ("Debtor" or "HPI"), by and through her counsel, hereby moves the Bankruptcy Court, pursuant to this motion ("Motion"), for the entry of an order ("Sale Order") that provides the following relief:

1.　　Grants the Motion.

2.　　Approves the sale of the bankruptcy estate's ("Estate") right, title, and interest in and to certain inventory and personal properties of the Estate (collectively, "Purchased Assets") to Lamson-Elliott Investments LLC as the buyer ("Buyer"), or to the highest or best bidder ("Successful Bidder") at the auction ("Auction") at the sale hearing ("Sale Hearing") as determined by the Trustee and confirmed by the Bankruptcy Court, free and clear of all liens, claims, encumbrances and other interests pursuant to 11 U.S.C. § 363(f)[2] for the minimum sale price of $20,000.00.

3.　　Approves the proposed overbid procedures ("Overbid Procedures") for the sale.

4.　　Finds that the parties have entered into an arm's length transaction and that Buyer or Successful Bidder is a good faith purchaser under 11 U.S.C. § 363(m).

5.　　Grants a waiver of the fourteen-day stay provision of Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 6004(h).

---

[2] United States Code, Title 11 is hereinafter referred to as the Bankruptcy Code.

2

#65138168v2

6. Authorizes the Trustee to enter into and perform the obligations under the Asset Purchase Agreement ("APA") attached hereto as Exhibit 1, and sign and deliver all relevant and related sale documents reasonably necessary to effectuate and close the sale and related transactions, including without limitation appropriate Bill of Sale.

7. Deems the lease of the commercial space located at 445 Higuera Street, San Luis Obispo, CA 93401 ("Thrift Store"), which houses the Purchased Assets, rejected pursuant to 11 U.S.C. § 365(a) as of August 1, 2025 ("Petition Date").

8. Approves the Trustee's stipulation with the U.S. Small Business Administration ("SBA") in connection with the SBA's lien on the Purchased Assets.

9. Grants such related relief as the Court deems just and proper.

A copy of APA is attached to the Declaration of Nancy Zamora and incorporated herein by reference as **Exhibit 1**. The sale is "as is, where is" with no representations, guaranties, and/or warranties whatsoever, express, or implied. There is no cost in the form of brokers or sales agents associated with this sale transaction. Trustee also does not anticipate any adverse tax consequence resulting from the sale.

With the Debtor ceasing its business operations and the sale of the Purchased Assets, there is no longer a need for the Estate to retain the Thrift Store lease. Thus, the lease has no benefit to the Estate and will continue to accrue unnecessary administrative rent of at least $10,300 per month if not rejected.

The Purchased Assets serve as collateral of the SBA pursuant to that certain loan agreement between the Debtor and the SBA. The sale is also conditioned upon the SBA consenting to the sale and agreeing, *inter alia*, to accept as payment $20,000 ("Purchase Price") - the sale price for Purchased Assets in satisfaction of its lien against the Purchased Assets. The executed *Stipulation Between the Trustee and the U.S. Small Business Administration Regarding Claim Number 5* ("Stipulation") between the Trustee and the SBA is being filed concurrently with this Motion and a copy is attached to the Declaration of Lovee Sarenas and incorporated herein by reference as **Exhibit 2**.

/ / /

This Motion is predicated upon 11 U.S.C. §§ 105, 363, 365, 502, and 506 and Bankruptcy Rules 2002, 6004, 6006, and 9013. This Motion is brought pursuant to Local Bankruptcy Rules ("LBR") 6004-1(b) and 9013-1. In support of this Motion, the Trustee submits the (a) Memorandum of Points and Authorities; (b) Declarations of Nancy Zamora ("Zamora Decl."), Lauren Somma ("Somma Decl."), and Lovee Sarenas ("Sarenas Decl."), and exhibits; (c) the pleadings on file with the Bankruptcy Court of which this Bankruptcy Court is requested to take judicial notice; and (d) such other pleadings and evidence as may be properly submitted in connection with the Motion.

Any response or objection to this Motion must be made in writing, in the form required by LBR 9013-1(f), filed with the Bankruptcy Court, and served **no later than November 18, 2025,** on the following:

| | |
|---|---|
| **Chapter 7 Trustee** | **Counsel to Chapter 7 Trustee** |
| Nancy Zamora, Chapter 7 Trustee | Peter J. Mastan, Esq. |
| Zamora & Hoffmeier | Lovee Sarenas, Esq. |
| 633 W. 5th Street, Suite 2600 | Dinsmore & Shohl LLP |
| Los Angeles, CA 90071 | 550 S. Hope Street, Suite 2800 |
| | Los Angeles CA 90071 |
| **Counsel to Buyer** | **United States Bankruptcy Court** |
| Law Offices of Edwin J. Rambuski | Honorable Ronald A. Clifford III |
| Attn.: Edwin J. Rambuski, Esq. | United States Bankruptcy Court |
| 1401 Higuera Street | 1415 State Street, Suite 233 / Courtroom 201 |
| San Luis Obispo, CA 93401 | Santa Barbara, California 93101-2511 |
| **Office of the United States Trustee** | |
| 915 Wilshire Blvd., Suite 1850 | |
| Los Angeles, California 90017 | |

WHEREFORE, the Trustee seeks (i) the entry of a Sale Order that provides for the foregoing relief sought in this Motion; and (ii) granting such other relief as the Court deems necessary and proper**.**

Dated: October 31, 2025    DINSMORE & SHOHL LLP

By: /s/ Lovee D. Sarenas
    Peter J. Mastan
    Lovee D. Sarenas
    Counsel to Nancy Zamora, Chapter 7 Trustee

#65138168v2

# TABLE OF CONTENTS

I.      STATEMENT OF RELEVANT FACTS……………………………………………………..8

A.   The Debtor's Bankruptcy Filing. .........................................................................8

B.   Lease............................................................................................................................8

C.   Purchased Assets. .....................................................................................................9

D.   SBA Lien. ....................................................................................................................9

II.     SALIENT TERMS OF THE SALE ......................................................................9

III.    AGREEMENT WITH THE SBA ........................................................................10

IV.     PROPOSED OVERBID PROCEDURES ........................................................11

V.    LEGAL ARGUMENT ...........................................................................................13

A.   Supported by Sound Business Judgment, the Proposed Sale Meets the Standard for
Approving Sale of Estate Assets. .......................................................................13

   1.   A Sound Business Justification Exists. ......................................................13

   2.   The Sale is in the Best Interest of the Estate. .........................................14

   3.   Notice of the Sale and the Sale Hearing is Adequate and Timely. ......................14

   4.   The Sale is Made in Good Faith and the Result of an Arm's Length Transaction. ............15

B.   Buyer Should be Afforded 363(m) Protection. .....................................................15

C.   The Sale Should be Approved Free and Clear of Liens and Interests......................16

D.   The Proposed Overbid Procedure Will Not Prejudice Any Interested Party and Will Benefit
the Estate and Its Creditors.......................................................................17

E.   The Lease Should be Rejected. .........................................................................18

F.   The Court Should Permit Immediate Relief and Waiver of Bankruptcy Rule 6004(h). ..........19

VI.     CONCLUSION ...........................................................................................20

#65138168v2

1

# TABLE OF AUTHORITIES

2

## Cases

3

4

*Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*
5
   94 B.R. 343 (E.D. Pa. 1988) ........................................................................ 16
6

*In re Abbots Dairies of Pa., Inc.*
   788 F. Ed 143 (3d Cir. 1986) ...................................................................... 15
7

*In re Canyon P'ship*
8
   55 B.R. 520 (Bankr. S.D. Cal. 1985) ......................................................... 13
9

*In re Continental Air Lines, Inc.*
   780 F.2d 1223 (5th Cir. 1986) .................................................................... 13
10

*In re Crown Corp.*
11
   679 F.2d 774 (9th Cir. 1982) ...................................................................... 17
12

*In re Crowthers McCall Pattern, Inc.*
   114 B.R. 877 (Bankr. S.D.N.Y. 1990) ....................................................... 17
13

*In re Delaware & H. R. Co.*
14
   124 B.R. 169 (D. Del. 1991) ....................................................................... 13
15

*In re Equity Funding Corp.*
   492 F.2d 793 (9th Cir. 1974) ...................................................................... 14
16

*In re Huntington Ltd.*
17
   654 F.2d 578 (9th Cir. 1991) ...................................................................... 14
18

*In re Kellstrom Indus., Inc.*
   282 B.R. 787 (Bankr. D. Del. 2002) ........................................................... 16
19

*In re M Capital Corp.*
20
   290 B.R. 743 (9th Cir. BAP 2003) ............................................................. 16
21

*In re Table Talk, Inc.*
   53 B.R. 937 (Bankr. D. Mass. 1985) .......................................................... 18
22

*In re Walter*
23
   83 B.R. 14 (B.A.P. 9th Cir. 1988) .............................................................. 13
24

*In re Wilde Horse Enters., Inc.*
   136 B.R. 830 (Bankr. C.D. Cal. 1991) ........................................... 13, 14, 15

25

26

27

28

**Statutes**

11 U.S.C § 101 ................................................................................................... 1

11 U.S.C. § *105*(a) ........................................................................................... 9

11 U.S.C. § *363*(b) ........................................................................................... 5

11 U.S.C. § *363*(f) ........................................................................................ 1, 9

11 U.S.C. § *363*(m) ................................................................................. 1, 8, 11

11 U.S.C. § 704 ................................................................................................. 5

**Rules**

Fed. R. Bank P. Rule 6004 ........................................... 12, 13, 14, 15, 19, 20, 27

#65138168v2

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.      **STATEMENT OF RELEVANT FACTS**

    A.      **The Debtor's Bankruptcy Filing**.

The Debtor, doing business as Wilshire Hospice, was one of five affiliated entities ("Affiliates") that were in the business of providing at-home as well as telehealth and virtual patient care services and counseling to seniors and other patients in the Central Coast. The Debtor and its Affiliates each commenced a voluntary bankruptcy case under chapter 7 of Bankruptcy Code on August 1, 2025, in the United States Bankruptcy Court for the Central District of California, Northern Division ("Court"). Nancy Zamora has accepted her appointment as the trustee for the Estate and the bankruptcy estates of all Affiliates.

    B.      **Lease**.

As part of its operations, Debtor ran a Thrift Store located at 445 Higuera Street, San Luis Obispo, CA 93401 ("Store Location"), under the name Hope Chest which sold various low-cost merchandise for men, women, and children, furniture, home decorations, and small appliances. As of the Petition Date, the Debtor had an unexpired lease with Lamson-Elliott Investments, LLC f.k.a. JFM Limited Partnership ("Lessor") for the Store Location pursuant to that certain Commercial Lease Agreement dated January 2009 and subsequent amendments thereto ("Lease"). A copy of the Lease is attached to the Zamora Decl. as **Exhibit 3**. Under the Fifth Lease Amendment, the Lease term expires on June 30, 2027. The monthly rent was $10,300 pursuant to the Lease. On October 27, 2025, the Lessor filed proof of claim number 7 on account of the Lease ("Claim 7") in the sum of $129,553.21.

With the filing of the Debtor's bankruptcy case, Hope Chest is closed and no longer selling to the public. As of the Petition Date, certain inventory and store equipment remain in the Thrift Store. The Lessor desires to re-let the premises and as such, has offered to purchase the personal properties of the Debtor that remain in the Thrift Store. The Lessor is also the Buyer of the Purchased Assets in this case.

/ / /

/ / /

8

#65138168v2

**C.      Purchased Assets.**

The Purchased Assets are identified and listed in Schedule 1.01-A to the APA that is attached to the Zamora Decl. and incorporated herein by reference as **Exhibit 1**. In general, the Purchased Assets consist mainly of (i) inventory in the form of used home furniture, small appliances, merchandise for men, women, and children, and (ii) equipment of the Debtor used in the operating of the store such as mannequins, point-of-sale equipment, store furniture, and store appliances.

**D.      SBA Lien.**

Pursuant to that certain Loan Authorization and Agreement, Note, and Security Agreement entered into between the Debtor and the SBA dated June 14, 2020 ("Loan Documents"), the SBA asserts a lien on the Purchased Assets. The original principal amount of the loan was $150,000.00 with interest at 2.75% per annum.

On July 2, 2020, the SBA recorded a UCC-1 in its favor against the Debtor (No. 20-7800822594) reflecting debt secured by all assets of the Debtor including the Purchased Assets. A true and correct copy of the UCC-1 (together with any subsequent amendment thereto) is attached to the Sarenas Decl. and incorporated herein by reference as **Exhibit 4**. The Trustee is not aware of any other valid lien against the Purchased Assets. On September 17, 2025, the SBA filed proof of its asserted secured claim in the sum of $147,310.43 ("Claim 5").

**II.      SALIENT TERMS OF THE SALE**

The salient terms of the sale are as follows:

a.      The Purchased Assets are being sold to the Buyer for $20,000 ("Purchase Price"), subject to Bankruptcy Court approval and overbids, on an "as is, where is" basis without any warranties or representations whatsoever, with all faults and on the terms and conditions set forth in the APA. APA, §§ 1.02, 1.03, and 1.05.[3]

b.      The sale does not include the assets that are listed in Schedule 1.01-B to the APA ("Excluded Assets"). APA, § 1.01.

/ / /

/ / /

---

[3] APA is attached to the Zamora Decl. as Exhibit 1.

#65138168v2

c.    Payment is due to the Trustee three (3) days after the execution of the APA by the Buyer to be held in the Trustee's segregated account. Payment is nonrefundable except if the Buyer is not the successful bidder at the sale. APA, §§ 1.03 and 1.04.

d.    As additional consideration for the Sale, the Buyer is waiving all of its administrative claim as defined under the Bankruptcy Code relating to the Lease ("Administrative Rent") and releasing all claims held by the Buyer against the Estate including any claim under Bankruptcy Code §502(b)(6) ("Rejection Claim"). APA, §§ 1.03 and 4.01.

e.    The sale of the Purchased Assets shall be free and clear of all liens, claims, encumbrances, and interests. APA, § 1.01.

f.    As a condition to the closing of the sale, the Lease shall be deemed rejected as of the Petition Date. APA, § 2.02.

g.    The Bankruptcy Court-Northern Division will retain jurisdiction to hear any dispute relating to the transaction contemplated in the APA.  APA, § 5.11.

The Trustee further requests that the Buyer be afforded the protection of a good faith purchaser pursuant to Bankruptcy Code § 363(m). There is no break-up fee associated with this transaction.

## III.    AGREEMENT WITH THE SBA

In view of the sale of the Purchased Assets in which the SBA holds a lien, the Trustee, through counsel, engaged in negotiations with the SBA in order to facilitate the sale and address the SBA lien on assets of the Estate. The result is a separate agreement with the SBA memorialized in a Stipulation that has been filed concurrently with this Motion. A true and correct copy of the Stipulation between the Trustee and the SBA is attached to the Sarenas Decl. as **Exhibit 2** and incorporated herein by reference.

The Stipulation provides for the allowance of Claim 5 in the amount of $146,000 after deducting the post-petition payments made by the Debtor on 8/1/2025, 8/14/2025 and 9/15/2025 ("Allowed Secured Claim"). The Allowed Secured Claim shall be reduced dollar for dollar by, (i) any other payments made post-petition to the SBA from the Debtor's bank account, (ii) payment of $20,000 from the proceeds of the sale of the Purchased Assets; and (iii) any payment made by the

10

1   Estate to the SBA in connection with the accounts receivables that were outstanding as of the Petition

2   Date ("Accounts Receivables") and recovered by the Estate (collectively, "Estate Credits"). The

3   Estate and the SBA will share 50-50 any net proceeds from the Accounts Receivable after payment

4   of the Trustee's attorney's fees and costs incurred to recover the receivables. For the avoidance of

5   any doubt, the SBA releases its lien in the Estate's 50% share, the attorneys' fees and costs paid from

6   any Accounts Receivable proceeds, and cash of the Estate, if any. The SBA will then have an

7   allowed unsecured claim for the balance of the Allowed Secured Claim after deducting the Estate

8   Credits.

9   **IV.      PROPOSED OVERBID PROCEDURES**

10          The sale of the Purchased Assets is subject to overbids at an Auction to be conducted at

11   the Sale Hearing. Trustee requests the Court to establish the following Overbid Procedures for

12   any competing bid received in connection with the sale.

13          1.      The Purchased Assets shall be sold as a single lot and any overbids will have to

14   provide for the purchase of the whole lot.

15          2.      The minimum overbid must be $2,000 above the Purchase Price plus the amount of

16   the outstanding Administrative Rent that is being waived by the Buyer, which amount is equal to

17   the rent incurred from the Petition Date through the closing of the sale.

18          3.      Any person or entity who intends to participate in the overbid process ("Bidder")

19   must serve the Trustee and her counsel with the initial bid ("Initial Bid") so that it is actually

20   received no later than 5:00 p.m. on **November 25, 2025** ("Bid Deadline"). Each Initial Bid must

21   include (i) a cashier's check or money order made payable to "Nancy Zamora, Chapter 7 Trustee"

22   in the amount not less than $63,700 comprised of the full Purchase Price plus $2,000 and at least

23   $41,200 of Administrative Rent; and (ii) cashier's checks payable to the Trustee in the maximum

24   amount for any potential bid for such assets. The Initial Bid must be delivered to:

25                          Dinsmore & Shohl LLP
                            Attn: Peter J. Mastan, Esq.
26                               Lovee D. Sarenas, Esq.
                            550 S. Hope Street, Suite 2800
27                          Los Angeles, CA 900710

28

11

4.      Bidder must agree to substantially similar terms and conditions as the APA together with the monetary equivalent of waived Lessor claim.

5.      Only parties with conforming Initial Bids submitted by the Bid Deadline shall be considered a "Qualified Bidder" and may bid at the sale. Trustee shall have the sole authority to determine (i) whether a party is a Qualified Bidder; and (ii) whether the overbid is the highest and best bid ("Successful Bidder") for the Purchased Assets.

6.      The Buyer is entitled to overbid and is deemed a Qualified Bidder to the extent of cashier's checks provided to the Trustee at or before the hearing on the Motion.

7.      Every subsequent overbid over the Initial Bid shall be in minimum increments of at least $2,000.

8.      Each Qualified Bidder or an authorized representative of the Qualified Bidder must be present at the sale in order to overbid. Qualified Bidders are permitted to continue overbidding after initially passing their turn(s) to overbid. Any overbid must remain open until the conclusion of the Auction at the Sale Hearing.

9.      If the Buyer is not the Successful Bidder of the Purchased Assets, the Purchase Price paid by the Buyer shall be refunded, and the Successful Bidder shall be deemed the new buyer under the terms of the APA.

10.     If the Successful Bidder cannot deliver the balance of the total overbid purchase price within five days of the entry of the order granting the Motion and is unable to complete the purchase of the Purchased Assets, the Trustee shall be authorized to accept the offer made by the next highest bidder.

Concurrent with the filing of the Motion, the Trustee is filing the requisite Form 6004-2 Notice of Sale of Estate Property to be published in the Court's website, which notifies the public and potential third-party purchasers of the proposed sale and Overbid Procedures. The Notice of the hearing shall also be served on any prospective buyers known to the Trustee.

/ / /

/ / /

/ / /

#65138168v2

## V.    **LEGAL ARGUMENT**

### A.    **Supported by Sound Business Judgment, the Proposed Sale Meets the Standard for Approving Sale of Estate Assets.**

Bankruptcy Code § 363 and Bankruptcy Rule 6004 authorize the Trustee to sell estate property outside of the ordinary course of business following a noticed hearing upon establishing that: (1) a sound business purpose exists for the sale; (2) the sale is in the best interest of the estate, i.e., the sale price is fair and reasonable; (3) notice of the sale was adequate; and (4) the sale is made in good faith and at arm's length." *In re Wilde Horse Enters., Inc*., 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re Delaware & H. R. Co*., 124 B.R. 169, 176 (D. Del. 1991) (Once a court is satisfied that there is a sound business reason. . . the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith.)  As discussed more fully below, Trustee's proposed sale of the Purchased Assets meets the foregoing standard.

### 1.    **A Sound Business Justification Exists.**

The Ninth Circuit Bankruptcy Appellate Panel has applied a flexible case by case test to determine whether a sound business purpose justifies a proposed sale under § 363(b). *In re Walter*, 83 B.R. 14, 15-16, 19–20 (B.A.P. 9th Cir. 1988) (adopting the language of *In re Continental Air Lines, Inc*., 780 F.2d 1223, 1226 (5th Cir. 1986)). The application of the business judgment test affords a trustee discretion in balancing the costs and benefits of administering or disposing of estate assets according to the needs of the estate. *In re Canyon P'ship*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).

Here, the sale of the Purchased Assets is in furtherance of the Trustee's duty to liquidate the assets of the Estate under Bankruptcy Code § 704 and to address certain claims against the Estate. In doing so, the Trustee has evaluated the Purchased Assets located at the Thrift Store. Two potential buyers approached the Trustee, and the Lessor made the best and highest offer for the Purchased Assets given the type of merchandise to be sold. Zamora Decl. ¶¶ 11 and 12.

In addition to the Purchase Price, the Estate is receiving valuable consideration for the sale through the waiver of the Administrative Rent and any rejection damages that may result from the

#65138168v2

rejection of the Lease. Exhibit 1, §§ 1.03 and 4.01. As such, the Estate is not only receiving $20,000 for the sale but the Buyer is also waiving an administrative claim equal to at least 4 months' rent and a Rejection Claim equal to a year's worth of rent remaining on the Lease. In addition, the Buyer will bear the cost of removing the Purchased Assets from the Store Location. Exhibit 1, § 5.12. Under the circumstances, the Trustee has determined that the Buyer is in the best position to purchase the Purchased Assets.

### 2.    The Sale is in the Best Interest of the Estate.

The Ninth Circuit Court of Appeals has ruled in cases under the Bankruptcy Code that a sale of a debtor's property should be approved if it is in the best interests of the estate and creditors. *In re Huntington Ltd.*, 654 F.2d 578, 589 (9th Cir. 1991); *In re Equity Funding Corp.,* 492 F.2d 793, 794 (9th Cir. 1974). Best interest is satisfied when the purchase price is determined to be fair and reasonable. *In re Wilde Horse Enters., Inc*., 136 B.R. at 841.

Here, the sale not only addresses the Lessor's claim relating to the Lease but also resolves the SBA's secured claim against the Estate. Payment of the Purchase Price to satisfy the SBA's secured claim is material to the SBA's agreement to release its lien on any other cash that the Estate may have in its possession or may recover in the future, and to limit its secured claim to the Purchase Price and 50% of any net recovery from the Estate's Accounts Receivables. Exhibit 2, ¶ 6. Thus, the sale is in the best interest of the Estate and its creditors because it accomplishes three things:  (i) it monetizes assets of the Estate that would otherwise be difficult to move and sell; (ii) resolves any Lessor claims; and (iii) resolves the SBA's lien against Estate assets. The total consideration being provided (both monetary and non-monetary) is fair and reasonable under the circumstances.

Furthermore, the sale contemplates overbids to obtain the highest value for the Purchased Assets and the implementation of such Overbid Procedures affords additional assurance that the highest and best price will be realized from the sale of the Purchased Assets.

### 3.    Notice of the Sale and the Sale Hearing is Adequate and Timely.

Filed concurrently with this Motion are the Notice of Sale (LBR Form 6004-2), which is served on the Clerk's Office for publication with the Court, the Debtor, the U.S. Trustee, and parties listed in the Court's notice of electronic filing, and the Notice of Hearing, which is served on all

#65138168v2

known creditors of the Estate, the U.S. Trustee's Office, the Debtor, the Buyer, parties who are entitled to receive notice or have requested special notice, and all known persons who may be interested in purchasing the Purchased Assets. The salient terms of the sale and the time for objections to the sale were provided in the foregoing notices. Sarenas Decl., ¶ 13. The foregoing notices constitute adequate notice under Rule 6004. Trustee requests a finding that notice of the sale is timely and proper.

> **4.    The Sale is Made in Good Faith and the Result of an Arm's Length Transaction.**

Although the Bankruptcy Code does not define "good faith," courts have found that "good faith encompasses fair value and further speaks to the integrity of the transaction." *In re Wilde Horse Enterprises, Inc*., 136 B.R. at 842 (internal quotation marks omitted). Bad faith includes collusion between buyer and seller or otherwise taking unfair advantage of other potential purchasers, such as a collusive insider transaction. *Id*.

Here, the sale terms were the result of arm's length negotiations between the parties over a period of time. Zamora Decl., ¶ 26; Somma Decl., ¶ 14; Sarenas Decl., ¶¶ 11 and 12. Each party was represented by counsel. Somma Decl., ¶ 17; Sarenas Decl., ¶¶ 10 and 11. The Buyer conducted its due diligence and inspected the Purchased Assets. Somma Decl., ¶ 8. There are no contingencies to the sale other than Bankruptcy Court approval. Somma Decl., ¶ 10.

Further, an auction sale, as proposed here, is generally considered sufficient to establish value for the assets to be sold. *In re Abbots Dairies of Pa., Inc*., 788 F. Ed 143, 149 (3d Cir. 1986). The Trustee believes the terms of the proposed overbid process will not chill any potential bidding and instead, would encourage a transparent sale of the Purchased Assets. Zamora Decl., ¶ 23. The proposed sale, in accordance with the terms and conditions in the APA, is in good faith and the sale should be allowed to move forward. Zamora Decl., at ¶¶ 27 and 28.

**B.    Buyer Should be Afforded 363(m) Protection.**

Section 363(m) protects the validity of a sale from the "reversal or modification on appeal of an authorization under subsection (b) or (c) of [§ 363] of a sale or lease of property" so long as buyers "purchased or leased such property in good faith" and the sale is not stayed. 11 U.S.C. § 363(m).

15

Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves

fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly

unfair advantage of other bidders. *Southwest Products, Inc. v. Durkin (In re Southwest Products,*

*Inc.)*, 144 B.R. 100, 103 (9th Cir. BAP 1992); *In re M Capital Corp.*, 290 B.R. 743, 748 n.3 (9th Cir.

BAP 2003) (citation omitted). None of those scenarios are present here.

Based on the Somma Declaration, no collusion is involved in this sale and the Buyer is a good

faith purchaser as contemplated under to 11 U.S.C. § 363(m). The sale is the product of arms' length

negotiations between the Trustee and the Buyer through their respective counsel. Somma Decl., ¶¶

14, 15 and 17; Sarenas Decl. ¶¶ 10 and 11; Zamora Decl. ¶ 26.

All material provisions concerning the sale are described and disclosed in the notice of

hearing on the sale and bid procedures to afford all potential purchasers the same opportunity to

overbid and maximize value for the Purchased Assets. Sarenas Decl., ¶ 13 . The terms of the

proposed Overbid Procedures accomplish this objective. For these reasons, the Trustee requests the

Court to make a factual determination that the Buyer, or the Successful Bidder at the Sale Hearing,

has purchased the Purchased Assets in good faith as contemplated under 11 U.S.C. § 363(m).

## C.    <u>The Sale Should be Approved Free and Clear of Liens and Interests.</u>

Section 363(f) of the Bankruptcy Code authorizes a sale free and clear of any interest in

property if one of the following conditions is satisfied:

> (1) applicable nonbankruptcy law permits sale of such property free and
>     clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is
>     greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to
>     accept a money satisfaction of such interest.

Because Bankruptcy Code § 363(f) is stated in the disjunctive, satisfaction of any one of its five

requirements will suffice to permit the sale of the assets "free and clear" of liens and interests. *See In*

*re Kellstrom Indus., Inc*., 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the

disjunctive, not the conjunctive, and if any of the five conditions is met, the debtor has the authority

to conduct the sale free and clear of all liens.") *citing Citicorp Homeowners Servs., Inc. v. Elliot (In*

*re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988). This provision is further supplemented by Bankruptcy Code § 105(a), which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

Here, subsection 363(f) is met. The SBA has a lien on Purchased Assets as of the Debtor's bankruptcy filing. With the Stipulation between the Trustee and the SBA, SBA consents and accepts the Purchase Price in full payment of its lien on the Debtor's inventory. Sarenas Decl. ¶ 19. The SBA further agrees to accept 50% of any recovery on Accounts Receivables in satisfaction of its secured claim and for the balance of its claim to be deemed unsecured satisfying §§ 363(f)(1), (2) and (5). Exhibit 2, ¶¶ 6 and 7. As such, in the exercise of the Trustee's business judgment, the Stipulation is in the best interest of the Estate and its creditors and should be approved as it facilitates the sale of the Purchased Assets and resolves any issues concerning the SBA's secured claim.

Should any other lien, claim, encumbrance, or interest be discovered relating to the sale, the Trustee will supplement the Motion and any disputed lien, claim, encumbrance, or interest will also attach to the proceeds with the same priority and validity existing as of the time the Debtor commenced its bankruptcy case. Given the foregoing, the Purchased Assets can be sold and transferred to the Buyer (or Successful Bidder) free and clear of all liens and interest pursuant to Bankruptcy Code § 363(f).

**D.** **The Proposed Overbid Procedure Will Not Prejudice Any Interested Party and Will Benefit the Estate and Its Creditors.**

Trustee requests the Court to establish a bidding procedure for prospective overbidders at the sale. Subject to Court approval, the Overbid Procedures described in **Section IV** will apply to any person wishing to present a competing offer with respect to the Purchased Assets. Applying section 363 of the Bankruptcy Code, bankruptcy courts frequently have approved auction and sale procedures after considering the reasonableness of the procedures by which a trustee intends to conduct the auction. *See, e.g., In re Crown Corp.*, 679 F.2d 774, 775 (9th Cir. 1982) (noting that the district court had required specified minimum overbid amounts, deposits, and the form of the APA to be used by bidders); *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 879 (Bankr. S.D.N.Y.

17

1990) (noting that the bankruptcy court had entered an order requiring that overbids be made in specified minimum increments with deposits); *In re Table Talk, Inc*., 53 B.R. 937, 943 (Bankr. D. Mass. 1985) (noting that section 363 of the Bankruptcy Code requires notice and a hearing prior to the establishment of sale and bid procedures for the sale of property of the estate).

The Trustee believes that the bid procedures establish appropriate parameters under the circumstances of this case. The proposed bid procedures are designed to establish "ground rules" for the Auction and to encourage bidding. The consideration for the sale not only includes the Purchase Price but also the waiver of the Administrative Rent, which should be included in the Initial Bid in order for the bid to be a similar or better offer than the Buyer's. In doing so, the Estate avoids being saddled with the Administrative Rent and gains the benefit of its bargain with the Buyer.

The bid procedures will allow the Bankruptcy Court to conduct the Auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders, if any, who demonstrate the ability to consummate the transaction. This will enable the Estate to obtain the highest possible price for the Purchased Assets while giving the Buyer an opportunity to also bid at the Auction. Accordingly, the Trustee requests that the Court implement the foregoing Overbid Procedures for the sale of the Purchased Assets. If there are no overbids, the Trustee seeks approval of the sale to Buyer pursuant to the terms of the APA.

### E.     The Lease Should be Rejected.

Pursuant to 11 U.S.C. § 365(a), the trustee, "subject to the court's approval, may assume or reject an executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see Robertson v. Pierce (In re Chi-Feng Huang)*, 23 B.R. 798, 800 (9th Cir. BAP 1982) ("The purpose of the power to reject is to augment the estate of the debtor."). In the case of an unexpired commercial lease, the lease is deemed rejected if the trustee fails to assume the lease within 120 days of the order for relief. 11 U.S.C. § 365(d)(4). At the same time, the trustee is obligated to perform under an unexpired commercial lease within 60 days after the order for relief and until such lease is assumed or rejected. 11 U.S.C. § 365(d)(3).

Courts have adopted the "business judgment test" when reviewing these decisions and have held that rejection is satisfied when a trustee has determined, using his/her business judgment, that

18

rejection will benefit the estate. *See, e.g.*, *NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 279 (3d Cir. 1982), *aff'd*, 465 U.S. 513 (1984); *In re Hertz*, 536 B.R. at 442; *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007). In *Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.),* 392 F.3d 1064, 1072 (9th Cir. 2004), the Ninth Circuit identified four nonexclusive factors to be considered by a bankruptcy court in making a determination whether exceptional circumstances warrant retroactive rejection of unexpired executory contracts and leases: (1) the debtor's immediate filing of a motion to reject the lease; (2) a debtor's prompt action in setting that motion for hearing; (3) the vacancy of the leased premises; and (4) the landlord's conduct and motivation in opposing a retroactive rejection of the lease. "The Ninth Circuit agrees with the First Circuit's holding that a bankruptcy court has discretion to grant a motion to reject a nonresidential lease retroactively. The retroactive date of rejection need not be on or after the date on which the landlord regains possession." *Id.* at 1075.

Here, the Estate has no need to retain the Lease after the sale of the Purchased Assets. The Debtor has ceased its business operations as of the Petition Date. Zamora Decl. ¶ 8. To retain the Lease would result in a significant administrative claim that will continue to accrue at $10,300 per month. Zamora Decl. ¶ 17. To continue with the Lease would be burdensome to the Estate. More importantly, rejection is being sought as part of a sale within the first 4 months of the case prior to the expiration of the deadline under § 365(d).  Furthermore, the Lessor has agreed to the proposed rejection of the lease. Exhibit 1, §§ 1.03 and 2.02.  Rejecting the Lease as of the Petition Date and entering into an agreement with the Lessor to waive the Administrative Rent and Rejection Claim against the Estate are in the best interest of the Estate and its creditors. As such, the Trustee should be permitted to reject the Lease as proposed.

## F.    The Court Should Permit Immediate Relief and Waiver of Bankruptcy Rule 6004(h).

The Trustee requests that the Court waive Bankruptcy Rule 6004(h) which provides:

> **(h) Stay of order authorizing use, sale, or lease of property**. An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise.

#65138168v2

1   A waiver of the foregoing stay provision will permit Trustee to immediately realize the value of the

2   Purchased Assets, provide finality to the Buyer or Successful Bidder, and avoid a prolonged closing

3   date.  The APA further provides that a waiver of the stay will enable the sale to close within 2 days of

4   the entry of the Sale Order and provide the Buyer the opportunity to take possession of the Store

5   Location immediately upon close of sale. Exhibit 1, § 2.01. As such, the Trustee requests that the stay

6   provision of Rules 6004(h) be waived and for the Trustee to be authorized to execute any instrument

7   necessary to effectuate the transfer of the Purchased Assets to the Buyer pursuant to Bankruptcy Rule

8   6004(f)(2) immediately.

9   **VI.    <u>CONCLUSION</u>**

10          WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court:

11                 1.      Grant the Motion;

12                 2.      Approve the sale of the Estate's rights, title, and interests in and to the

13   Purchased Assets to the Buyer Lamson-Elliott Investments LLC, or to the Successful Bidder at the

14   Auction at the Sale Hearing free and clear of all liens, claims, encumbrances and other interests

15   pursuant to 11 U.S.C. § 363(f) for the minimum sale price of $20,000.00;

16                 3.      Approve the proposed Overbid Procedures for the sale;

17                 4.      Find that the parties have entered into an arm's length transaction and that

18   Buyer is a good faith purchaser under 11 U.S.C. § 363(m);

19                 5.      Grant a waiver of the fourteen-day stay provision of Bankruptcy Rule 6004;

20                 6.      Authorize the Trustee to enter into and perform the obligations under the

21   APA and sign and deliver all relevant and related sale documents reasonably necessary to effectuate

22   and close the sale and related transactions;

23                 7.      Deem the lease of the commercial space located at 445 Higuera Street, San

24   Luis Obispo, CA 93401 rejected pursuant to 11 U.S.C. § 365(a) as of the Petition Date (i.e., August

25   1, 2025);

26   / / /

27   / / /

28   / / /

#65138168v2

1          8.       Approve the Trustee's stipulation with the U.S. Small Business

2    Administration in connection with the SBA's lien on the Purchased Assets; and

3          9.       Grant such related relief as the Court deems just and proper.

4    Dated: October 31, 2025                    DINSMORE & SHOHL LLP

5

6                                              By: /s/ Lovee D. Sarenas
                                                    Peter J. Mastan
7                                                   Lovee D. Sarenas
                                               Counsel to Nancy Zamora, Chapter 7 Trustee

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

**DECLARATION OF NANCY ZAMORA**

I, Nancy Zamora, declare as follows:

1.     I am the chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Hospice Partners, Inc. ("Debtor") pending in the United States Bankruptcy Court for the Central District of California.

2.     Except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

3.     This declaration is being submitted in support of the *Motion for the Entry of an Order: (A) Approving Sale of Purchased Assets Free and Clear of All Interests; (B) Approving Overbid Procedures; (C) Granting 11 U.S.C. § 363(m) Protection to Buyer as a Good Faith Purchaser; (D) Rejecting Unexpired Lease Pursuant to 11 U.S.C. § 365(A) as of the Petition Date; and (E) Approving the Stipulation Between the Small Business Administration and the Trustee Concerning the Lien on Purchased Assets* ("Motion").

4.     I am informed, and therefore believe, that the Debtor did business as Wilshire Hospice and was one of five affiliated entities ("Affiliates") that were in the business of providing at-home as well as telehealth and virtual patient care services and counseling in the Central Coast.

5.     The Court may take judicial notice of the following:

(a)     On August 1, 2025 ("Petition Date"), Debtor filed its voluntary petition for relief under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California, Northern Division ("Court"). [ECF No. 1.]

(b)     I accepted the appointment to serve as the chapter 7 trustee for the Debtor's Estate and the bankruptcy estates of all Affiliates. [ECF No. 2.]

(c)     On September 17, 2025, the U.S. Small Business Administration ("SBA") filed proof of an asserted secured claim in the sum of $147,310.43 ("Claim 5").

6.     I am informed, and therefore believe, that as part of its operations, Debtor ran a Thrift Store located at 445 Higuera Street, San Luis Obispo, CA 93401 ("Store Location"), under the name Hope Chest which sold various low-cost merchandise for men, women, and children, furniture, home

#65138168v2

decorations, and small appliances.

7.      As of the Petition Date, the Debtor had an unexpired lease with Lamson-Elliott Investments, LLC f.k.a. JFM Limited Partnership ("Lessor"). To the best of my knowledge, a copy of the Commercial Lease Agreement dated January 2009 and subsequent amendments thereto ("Lease") is attached hereto and incorporated herein as **Exhibit 3**.

8.      The Debtor has ceased all operations as of the Petition Date.

9.      To the best of my knowledge, certain personal properties of the Debtor in the form of inventory and store equipment remain in the Store Location.

10.     The Lessor is also the Buyer of the Purchased Assets (as defined in the Asset Purchase Agreement) in this case.

11.     I received offers from two potential buyers for the Purchased Assets.

12.     The offer from the Lessor/Buyer is the highest and best offer I received for the type of merchandise to be sold.

13.     I instructed my counsel to negotiate a purchase agreement with the Lessor, through its counsel, for the Purchased Assets.

14.     A true and correct copy of the Asset Purchase Agreement ("APA") between myself, as the representative of the Estate on the one hand, and the Lessor/Buyer, on the other hand is attached hereto and incorporated herein by reference as **Exhibit 1**.

15.     A list of Purchased Assets is set forth in Schedule 1.01-A to the APA and consist mainly of (i) inventory in the form of used home furniture, small appliances, merchandise for men, women, and children, and (ii) equipment of the Debtor used in the operating of the store such as mannequins, point-of-sale equipment, store furniture, and store appliances.

16.     A list of assets excluded from the sale is set forth in Schedule 1.01-B to the APA.

17.     The Estate no longer needs to retain the Lease. To do so will only result in significant administrative rent that will continue to accrue at $10,300 per month and unduly burden the Estate.

18.     The entry of an order rejecting the Lease as of the Petition Date is a condition to close the sale.

/ / /

#65138168v2

19.    The rejection of the Lease and the waiver of any rejection claim or administrative rent claim are beneficial to the Estate and its creditors.

20.    I am informed, and therefore believe, that the SBA asserts a lien against the Purchased Assets, among other assets of the Estate.

21.    Upon my direction, I instructed my counsel to negotiate with SBA's counsel concerning the SBA's secured claim against the Estate.

22.    The sale accomplishes three things:  (i) it monetizes assets of the Estate that would otherwise be difficult to move and sell; (ii) resolves any Lessor claims; and (iii) resolves the SBA's lien against Estate assets.

23.    I further believe that the proposed Overbid Procedures would encourage rather than chill bidding for the Purchased Assets.

24.    The consideration for the sale not only includes the Purchase Price but also the waiver of the Administrative Rent, which should be included in the Initial Bid in order for the bid to be a similar or better offer than the Buyer's. In doing so, the Estate avoids being saddled with the Administrative Rent and gains the benefit of its bargain with the Buyer.

25.    Other than this transaction, I do not have any relationship with the Buyer/Lessor.

26.    To the best of my knowledge, information and belief, the Agreement was negotiated at arm's length, and the terms of the sale are as set forth in the APA. Each party was represented by counsel.

27.    I have not made, and to the best of my knowledge, no party has made any undisclosed side deals.

28.    On behalf of the Estate, I have entered into the sale transaction with the Buyer in good faith.

29.    I do not believe that there is any adverse tax consequence to the Estate associated with the sale of the Purchased Assets.

/ / /

/ / /

/ / /

#65138168v2

30. There are no sales costs in the form of brokers or sale agents associated with the sale. The sale does not provide for a break-up fee to the Buyer.

31. I believe that a sale of the Purchased Assets on the terms set forth in the Agreement is fair, reasonable, and in the best interests of the Estate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this **29** th day of the October, 2025 in Los Angeles, California.

NANCY ZAMORA

#65138168v1

**DECLARATION OF LOVEE D. SARENAS**

I, Lovee Sarenas, declare:

1.      I am an attorney admitted to practice before this Court and I am a partner in Dinsmore & Shohl LLP, counsel to Nancy Zamora, the chapter 7 trustee ("Trustee") of the bankruptcy estate ("Estate") of Hospice Partners, Inc. ("HPI" or the "Debtor") in the above-captioned case.

2.      Except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

3.      This declaration is being submitted in support of the *Motion for the Entry of an Order: (A) Approving Sale of Purchased Assets Free and Clear of All Interests; (B) Approving Overbid Procedures; (C) Granting 11 U.S.C. § 363(m) Protection to Buyer as a Good Faith Purchaser; (D) Rejecting Unexpired Lease Pursuant to 11 U.S.C. § 365(A) as of the Petition Date; and (E) Approving the Stipulation Between the Small Business Administration and the Trustee Concerning the Lien on Purchased Assets* ("Motion").

4.      Upon the Trustee's direction, our office conducted a UCC-1 and a tax lien search on the Debtor through the California Secretary of State lien records and State County records.

5.      A UCC-1 filing in favor of U.S. Small Business Administration ("SBA") was recorded on July 2, 2020 (No. 92159680002) reflecting debt secured by all assets of the Debtor including those located in the Thrift Store.

6.      A true and correct copy of the UCC-1 statement (together with any subsequent amendment thereto) filed against the Debtor and in favor of the SBA is attached hereto and incorporated herein by reference as **Exhibit 4**.

7.      Pursuant to the Trustee's direction, I, on behalf of the Trustee, participated in negotiating the agreement with the SBA in connection with its lien as stated in Claim 5.

8.      A true and correct copy of the stipulation evidencing the agreement between the Trustee and the SBA is attached hereto and incorporated herein by reference as **Exhibit 2**.

9.      With the Stipulation between the Trustee and the SBA whereby the SBA consents and accepts the Purchase Price in full satisfaction of its lien against the Purchased Assets, the Purchased Assets can be sold free and clear of SBA's interest under Bankruptcy Code §§ 363(f)(1), (2) and (5).

26

#65138168v2

10.     At the direction of the Trustee, I participated in the negotiations resulting in the proposed purchase of the Purchased Assets for $20,000 to Buyer.

11.     Each party was represented by counsel in the sale transaction and in the negotiation with the SBA.

12.     The sale negotiations and the APA reached with the Buyer were conducted at arm's length and in good faith. I am not aware of any side deals relating to the APA.

13.     The Notice of Sale (LBR Form 6004-2) will be served on the Clerk's Office for publication with the Court, the Debtor, the U.S. Trustee, and parties listed in the Court's notice of electronic filing, and the Notice of Hearing, will be served on all known creditors of the Estate, the U.S. Trustee's Office, the Debtor, the Buyer, parties who are entitled to receive notice or have requested special notice, and all known persons who may be interested in purchasing the Purchased Assets. The material terms of the sale and the time for objections to the sale will be provided in the foregoing notices.

14.     I have consulted with the Estate's accountant and based thereon believe that there are no tax consequences arising from the sale.

 I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30th day of the October, 2025 in Los Angeles, California.


/s/ Lovee D. Sarenas
LOVEE D. SARENAS

#65138168v2

# DECLARATION OF LAUREN SOMMA

I, LAUREN SOMMA, declare:

1.      I am an individual over the age of 18. I am an authorized representative of Lamson-Elliot Investments, LLC ("Buyer") for the purchase of certain equipment and personal properties ("Purchased Assets") of the Debtor Hospice Partners, Inc. ("HPI" or the "Debtor") as set forth in the Asset Purchase Agreement ("APA") by and between the chapter 7 trustee Nancy Zamora ("Trustee") for the bankruptcy estate of the Debtor ("Estate") and the Buyer.

2.      Except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

3.      This declaration is being submitted in support of the *Motion for the Entry of an Order: (A) Approving Sale of Purchased Assets Free and Clear of All Interests; (B) Approving Overbid Procedures; (C) Granting 11 U.S.C. § 363(m) Protection to Buyer as a Good Faith Purchaser; (D) Rejecting Unexpired Lease Pursuant to 11 U.S.C. § 365(A) as of the Petition Date; and (E) Approving the Stipulation Between the Small Business Administration and the Trustee Concerning the Lien on Purchased Assets* ("Motion").

4.      The Buyer is also the landlord ("Lessor") of the commercial space occupied by the Debtor located at 445 Higuera Street, San Luis Obispo, CA 93401 ("Store Location") pursuant to that certain Commercial Lease Agreement dated January 2009 and subsequent amendments thereto ("Lease").

5.      Under the Fifth Amendment to the lease, the lease term is set to expire on June 30, 2027.

6.      I acknowledge that the Buyer is entering into the sale with the Trustee for the Purchased Assets under the APA.

7.      It is my understanding that the sale of the Purchased Assets is "as is, where is" with all faults, without any representations, guaranties, and/or warranties whatsoever, express, or implied.

8.      The Buyer has viewed the Purchased Assets located in Store Location and has made an independent inspection of the Purchased Assets and has concluded its due diligence in connection with the sale of the Purchased Assets.

28

#65138168v2

9. Buyer has sufficient funds to consummate the sale transaction pursuant to the terms of the APA. Buyer has paid the full Purchase Price to the Trustee pursuant to the terms of the APA.

10. There are no contingencies to this sale.

11. The source of funds for the purchase of the Purchased Assets, including any portion thereof, is not derived, directly or indirectly, from any assets or properties of the Estate or proceeds therefrom, or any affiliated entities, or any entities in which any of the foregoing are invested or serve as officers, directors, managers, or consultants.

12. Other than being the professional relationship of landlord-tenant, neither Buyer nor Buyer's principals have a relationship with the Debtor, Trustee or Trustee's counsel, or Debtor's principal.

13. I am informed, and acknowledge, that the sale of the Purchased Assets is conditioned upon Bankruptcy Court approval and is subject to overbids.

14. The sale negotiations were conducted at arms' length between the Trustee and the Buyer.

15. Neither Buyer nor Buyer's principals have acted in a collusive manner with any person in connection with this sale, and at all times have acted and will continue to act in good faith in proceeding towards a closing of the sale transaction contemplated by the APA.

16. On October 27, 2025, the Lessor filed proof of claim number 7 on account of the Lease ("Claim 7"). The Lessor has agreed to waive the Administrative Rent and all claims against the Estate and the Trustee including any rejection damage claims.

17. Each party was represented by counsel in this sale transaction.

Executed this 29 th day of the October, 2025 in Los Angeles, California.

_____
LAUREN SOMMA

# EXHIBIT 1

Exhibit 1
Page 30

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "**Agreement**"), dated as of October 20, 2025 is entered into by and between **(a)** Nancy Zamora, solely in her capacity as the chapter 7 trustee (the "**Trustee**" or "**Seller**") of the bankruptcy estate (the "**Estate**") of Hospice Partners, Inc. ("**HPI**"), and **(b)** Lamson-Elliott Investments, LLC ("**Buyer**") (each a "**Party**" and together, "**Parties**").

## RECITALS

**WHEREAS**, on August 1, 2025 ("**Petition Date**"), HPI filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code commencing the bankruptcy case titled *In re Hospice Partners, Inc.*, U.S.B.C. Case No. 9:25-bk-11033-RC (the "**HPI Case**").

**WHEREAS**, the Trustee was appointed to administer the Estate.

**WHEREAS**, prior to bankruptcy, HPI, among other things, operated the Hope Chest Thrift Store (the "**Thrift Store**") located at 445 Higuera St, San Luis Obispo, CA 93401 (the "**Store Location**").

**WHEREAS**, prior to bankruptcy, HPI entered into a lease agreement with Buyer ("**Lease**") whereby HPI leased the Store Location from Buyer.

**WHEREAS**, Seller wishes to sell and assign to Buyer, and Buyer wishes to purchase from Seller, the Estate's right, title, and interest in and to certain personal property assets of HPI used in connection with the operation of the Thrift Store that is currently located at the Store Location as of the Petition Date, subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

## ARTICLE I
## PURCHASE AND SALE

**Section 1.01   Purchase and Sale of Assets.** Subject to the terms and conditions set forth herein, including without limitation the requirement for Bankruptcy Court approval as set forth below, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller, all of Seller's right, title and interest in and to the personal property assets set forth on Section 1.01-A of the schedules ("**Schedules**") attached hereto (the "**Purchased Assets**"), on an "as is, where is" basis with no warranties or representations whatsoever, free and clear of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance ("**Encumbrances**"). The Purchased Assets expressly do not include the assets and liabilities set forth on Section 1.01-B of the Schedules ("**Excluded Assets and Liabilities**").

**Section 1.02   Bankruptcy Court Approval.** Upon execution of this Agreement, Seller shall, within a reasonable time thereafter, file a motion seeking an order from the Bankruptcy Court authorizing the sale of the Purchased Assets free and clear of all Encumbrances and seeking approval of this Agreement ("**Sale Motion**").   Both Buyer's and Seller's obligations to consummate the transactions contemplated in this Agreement are expressly conditioned upon the Bankruptcy Court's entry of an order granting the Sale Motion with Seller's offer confirmed by

the Trustee and the Bankruptcy Court as the highest and best after a noticed hearing before the Bankruptcy Court ("**Sale Hearing**").

**Section 1.03   Purchase Price.** The consideration to be paid by Buyer to Seller for the Purchased Assets shall consist of (a) **Twenty Thousand Dollars ($20,000)** (the "**Purchase Price**") to be paid by Buyer to Seller of immediately available funds by cashier's check or wire transfer within three (3) days of the Parties' execution of this Agreement ("**Payment**"), (b) the Buyer's waiver of any administrative claim, as defined by the Bankruptcy Code, related to the Lease held by Buyer against the Estate whether known or unknown ("**Administrative Claim**"); and (c) the Buyer's release of any claim held by Buyer against the Estate including any claim under Bankruptcy Code § 502(b)(6) whether known, unknown, express or implied (collectively, "**Consideration**").  The Purchase Price shall serve as the base price for any overbid.

**Section 1.04   Segregated Account**. Upon the Buyer's Payment of the Purchase Price to Seller, the Seller will hold the funds in one of the Trustee's segregated accounts until the Bankruptcy Court has entered an order with respect to the Sale Motion.

(a)      The Payment shall be nonrefundable except as expressly stated herein.

(b)      If the Bankruptcy Court approves the Sale Motion with a Successful Bidder (as defined below) other than the Buyer, the Payment shall be returned to the Buyer only upon the Bankruptcy Court's entry of a final non-appealable order granting the Sale Motion ("**Sale Order**").

(c)      If the Buyer is determined to be the successful Back-up Bidder (as defined below), the Payment shall be returned to the Buyer only upon the closing of the sale to the Successful Bidder.

**Section 1.05   Overbid.** Buyer acknowledges that the transaction contemplated by this Agreement is subject to overbids that Seller may receive pursuant to that certain sale and bid procedures approved by the Bankruptcy Court ("**Overbid Procedures**"). The Seller may seek approval of an offer received from a third party at the Sale Hearing if Seller determines, in its sole discretion, that such overbid is the higher and better offer for the Purchased Assets.

**ARTICLE II
CLOSING**

**Section 2.01   Closing.** The consummation and closing of the transactions contemplated by this Agreement (the "**Closing**") shall take place fifteen (15) days after the entry of the Sale Order provided that there is no stay in effect of the Sale Order (the "**Closing Date**").  The Parties may mutually agree that the Closing Date may occur two days after the entry of the Sale Order if the Sale Order provides for the waiver of the stay provisions of the Federal Rules of Bankruptcy Procedure  6004(h) and 6006(d) and the conditions of Section 2.02 have been met.

2

**Section 2.02    Closing Deliverables.**

(a)    At the Closing, Seller shall deliver to Buyer the following:

(i)    An entered Sale Order from the Bankruptcy Court that is final and non-appealable;

(ii)    An entered order or a provision in the Sale Order that authorizes the rejection of the Lease as of the Petition Date;

(iii)    a bill of sale in the form acceptable to Buyer (the "**Bill of Sale**") and duly executed by Seller, transferring the Purchased Assets to Buyer; and

(iv)    such other customary instruments of transfer, assumption, filings, or documents, in form and substance reasonably satisfactory to Buyer, as may be required to give effect to this Agreement.

(b)    At the Closing, Buyer shall deliver to Seller the following:

(i)    Any unpaid balance of the Purchase Price or, if applicable, the highest bid, of immediately available funds by cashier's check or wire transfer, delivered to Seller pursuant to Section 1.03 and such other customary instruments of transfer, assumption, filings, or documents, in form and substance reasonably satisfactory to Seller, as may be required to give effect to this Agreement.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

**Section 3.01    Seller Representations and Warranties.** Except as expressly set forth in the Agreement and subject to the terms and conditions hereof, Seller represents and warrants to Buyer:

(a)    **Authority of Seller.**  Subject to the Bankruptcy Court's entry of the Sale Order, Seller (i) has the power and authority to enter into this Agreement and to consummate the transactions contemplated herein, and (ii) this Agreement and all instruments, documents and agreements to be executed by Seller in connection therewith are or when delivered will be duly authorized, executed and delivered by Seller and will be valid, binding and enforceable obligations of the Estate, subject to the Sale Order and general equity principles, in accordance with their respective terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, or similar laws affecting the rights of creditors generally.

(b)    **"AS IS, WHERE IS" Sale.**  Without limiting the provisions of this Section, Buyer expressly acknowledges and agrees that:

**THE  PURCHASED ASSETS ARE BEING TRANSFERRED TO BUYER
ON AN "AS IS" AND "WHERE IS" BASIS AND WITH ALL FAULTS.
BUYER AGREES TO ACQUIRE THE PURCHASED ASSETS FROM**

3

**SELLER "AS IS" AND "WHERE IS" WITH ALL FAULTS, AND ACKNOWLEDGES THAT SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER, IMPLIED OR EXPRESS, WITH RESPECT TO THE PURCHASED ASSETS INCLUDING AS TO THE ACTUAL NATURE, QUALITY, FITNESS, DESIRABILITY, QUANTITY, AND THE EXISTENCE, MERCHANTABILITY, QUALITY, USABILITY, SUITABILITY FOR ANY PARTICULAR PURPOSE, AND THE CONDITION THEREOF, INCLUDING BUT NOT LIMITED TO ANY REPRESENTATION OR WARRANTY REGARDING THE OWNERSHIP, TITLE TO, LOCATION OR VALUE OF THE PURCHASED ASSETS.  BUYER FURTHER ACKNOWLEDGES THAT SELLER IS THE TRUSTEE APPOINTED IN THE BANKRUPTCY CASE AND THAT THE SELLER HAS LITTLE OR NO INFORMATION RELATING TO THE PURCHASED ASSETS AND MATTERS PERTAINING THERETO AND THAT ANY INFORMATION PROVIDED BY THE SELLER OR HER AGENTS OR REPRESENTATIVES IS BASED UPON INFORMATION PROVIDED BY DEBTOR OR ITS REPRESENTATIVES OR AGENTS AND/OR MATTERS FILED IN THE BANKRUPTCY CASE BY OTHER PERSONS OR PUBLIC RECORDS, AND SELLER HAS NOT INDEPENDENTLY REVIEWED ANY SUCH INFORMATION FOR ACCURACY OR COMPLETENESS. BUYER AGREES THAT SELLER SHALL HAVE NO LIABILITY OR OBLIGATION WHATSOEVER FOR ANY INACCURACY IN OR OMISSION FROM ANY DOCUMENT OR REPORT FURNISHED TO BUYER. SELLER HAS NO OBLIGATION OR LIABILITY WHATSOEVER WITH RESPECT TO ANY SEPARATE AGREEMENTS, INDEMNITIES, REPRESENTATIONS OR WARRANTIES ENTERED INTO BY BUYER WITH ANY OTHER PERSON.**

**Section 3.02   Buyer's Representation and Warranties.**  In consideration of Seller entering into this Agreement and as an inducement to Seller to consummate the transactions contemplated herein, Buyer hereby makes the following representations and warranties to Seller:

(a)    **Organization and Authority of Buyer; Enforceability**.  Buyer is a limited liability corporation duly organized, validly existing and in good standing under the laws of the state of California. Buyer has full corporate power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby. The execution, delivery, and performance by Buyer of this Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Buyer. This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Buyer and representative of the Buyer with full authority to sign this Agreement.  The documents to be delivered hereunder by the Buyer constitute legal, valid, and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms.

4

Exhibit 1
Page 34

(b)    **No Conflicts; Consents.** The execution, delivery and performance by Buyer of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of incorporation, by-laws or other organizational documents of Buyer; or (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Buyer.  No other consent, approval, waiver, or authorization is required to be obtained by Buyer from any person or entity (including any governmental authority) in connection with the execution, delivery, and performance by Buyer of this Agreement and the consummation of the transactions contemplated hereby.

(c)    **Legal Proceedings.** There is no Action of any nature pending or, to Buyer's knowledge, threatened against or by Buyer that challenges or seeks to prevent, enjoin or otherwise delay, avoid, or invalidate the transactions contemplated by this Agreement. No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Action.

(d)    **Due Diligence.**  Buyer further acknowledges and represents that (i) it is fully informed and advised with respect to the Purchased Assets, (ii) it has reviewed and inspected the Purchased Assets, (iii) it has had the opportunity to inspect the books and records relating to the Purchased Assets and the public filing records, if applicable, and (iv) enters into this Agreement after independent investigation of the facts and circumstances relating to the Purchased Assets and the transactions described in this Agreement.

**Section 3.03   Brokers.** Both Parties represent and warrant that no broker, finder, or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Seller and Buyer.

**ARTICLE IV**
**RELEASE**

**Section 4.01   California Civil Code Section 1542 Waiver.**  Buyer acknowledges that Buyer has read and understands Section 1542 of the California Civil Code which reads as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AD THAT IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Buyer hereby expressly waives and relinquishes all rights and benefits under California Civil Code § 1542 and any law of any jurisdiction of similar effect related to the Lease and any claim against the Estate.

5

**ARTICLE V**
**MISCELLANEOUS**

**Section 5.01    Termination.**  If the Bankruptcy Court enters a Sale Order approving the Sale Motion wherein the Successful Bidder is not the Buyer, this Agreement shall automatically terminate, and Seller and Buyer shall be relieved of any further liability or obligation hereunder except as provided in **Section 1.04**, which shall survive termination of the Agreement.

**Section 5.02    Time of Essence.** Time is of the essence of each and every term, condition, obligation, and provision hereof.

**Section 5.03    Notices.**  All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); or (c) on the date sent by e-mail of a PDF document (provided that the recipient shall confirm receipt thereof) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient.  Such communications must be sent to the respective Parties at the following addresses:

| | |
|---|---|
| If to Seller: | Nancy Zamora<br>Chapter 7 Trustee<br>Zamora & Hoffmeier<br>633 W. 5th Street<br>Suite 2600<br>Los Angeles, CA 90071 |
| With a Copy to: | Dinsmore & Shohl LLP<br>Attn: Peter J. Mastan, Esq.<br>and Lovee D. Sarenas, Esq.<br>550 S. Hope Street Suite 2800<br>Los Angeles, California 90071 |
| If to Buyer: | Lamson-Elliott Investments, LLC<br>4687 Coyote Canyon Road<br>San Luis Obispo, CA 93401<br>Attention: Lauren Somma and Sharon Goupil |
| With a Copy to: | Law Offices of Edwin J. Rambuski<br>Attn.: Edwin J. Rambuski, Esq.<br>1401 Higuera Street<br>San Luis Obispo, CA 93401 |

6

#64439516v4

Exhibit 1
Page 36

Notice of change of address shall be given by written notice in accordance with this Section. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to constitute receipt of the notice, demand, request or communication sent. Failure to provide "courtesy-only" copies shall not invalidate the notice otherwise given.

**Section 5.04    Headings.**  The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**Section 5.05    Severability.** If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

**Section 5.06    Entire Agreement.** This Agreement and the documents to be delivered hereunder constitute the sole and entire agreement of the Parties to this Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement and the documents to be delivered hereunder, the Schedules (other than an exception expressly set forth as such in the Schedules), the statements in the body of this Agreement will control.

**Section 5.07    Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and permitted assigns. Neither Party may assign her/its rights or obligations hereunder without the prior written consent of the other Party, which consent shall not be unreasonably withheld or delayed. No assignment shall relieve the assigning Party of any of her/its obligations hereunder.

**Section 5.08    No Third-Party Beneficiaries.** This Agreement is for the sole benefit of the Parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 5.09    Amendment and Modification.** This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each Party hereto.

**Section 5.10    Waiver.** No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the Party so waiving. No waiver by any Party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

**Section 5.11    Bankruptcy Court Jurisdiction.** The Parties hereto agree that the Bankruptcy Court of the Central District of California – Northern Division shall have exclusive

jurisdiction over all disputes and other matters relating to the interpretation and enforcement of this Agreement and/or any ancillary transaction documents executed pursuant hereto, provided, however, that if the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction with respect to any such action: (A) such abstention or refusal shall have no effect upon, and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such action, and (B) the Parties hereto expressly agree that any disputes between such Parties shall be submitted to the District Court for the Central District of California and, to the extent that the District Court for the Central District of California abstains from exercising or declines to exercise jurisdiction, to any court of competent jurisdiction in San Luis Obispo County, California.

**Section 5.12    Expenses.** Except as otherwise provided in this Section or as otherwise set forth in this Agreement, all costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby including fees and expenses in connection with the negotiation and preparation of this Agreement shall be paid by the Party incurring such costs and expenses. Any fees and costs associated with the removal of the Purchased Assets from the Store Location shall be borne by the Buyer or the Successful Bidder as determined by the Sale Order without a reduction of the Purchase Price. The Seller and the Estate shall not be obligated to pay for the fees and costs of removing the Purchased Assets from the Store Location. In the event of any action or suit by a Party hereto against another Party hereunder by reason of any breach of any of the covenants or agreements or any material inaccuracies in any of the representations and warranties on the part of the other Party arising out of this Agreement, then in that event, the prevailing Party in such action or dispute, whether by final judgment, or out of court settlement shall be entitled to have and recover from the other Party all costs and expenses of suit, including actual attorneys' fees. Any judgment or order entered in any final judgment shall contain a specific provision providing for the recovery of all costs and expenses of suit, including reasonable attorneys' fees incurred in enforcing, perfecting, and executing such judgment.

**Section 5.13    Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of California without giving effect to any choice or conflict of law provision or rule (whether of the State of California or any other jurisdiction).

**Section 5.14    Waiver of Jury Trial.** Each Party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues and, therefore, each such Party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement or the transactions contemplated hereby.

**Section 5.15    Specific Performance.** The Parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

**Section 5.16    Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by e-mail or other means of electronic

8

Exhibit 1
Page 38

transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[SIGNATURE PAGE FOLLOWS]

9

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written above by their duly authorized officers.

SELLER

Chapter 7 Trustee of the Bankruptcy Estate of Hospice Partners, Inc.

By ___Nancy Zamora___

Name: Nancy Zamora

Title: Chapter 7 Trustee

BUYER

Lamson-Elliott Investments, LLC

By _____

Name: Lauren Somma

Title: Manager

#64439516v4

Exhibit 1
Page 40

**SCHEDULE 1.01-A**
**Purchased Assets**

| Category | Quantity | Sale Price |
|---|---|---|
| Uncategorized | - | |
| DVD | 125 | |
| Furniture | 44 | |
| Games | 24 | |
| Purses | 8 | |
| Holidays | 3,000 | |
| Household | 10 | |
| Kids | 95 | |
| Luggage | 9 | |
| Men's/Women's shoes | 62 | |
| Men's Clothing | 600 | |
| Sporting Goods | 6 | |
| Women's Clothing | 4,500 | |
| Appliances | 2 | |
| Art | 59 | |
| Books | 320 | |
| Boutique | 400 | |
| Crafts | 34 | |
| Home décor | 15 | |
| Housewares | 240 | |
| Jewelry (fine) | 57 | |
| Jewelry (costume) | 215 | |

Total Inventory

| Equipment/Supplies | Quantity | Sale Price |
|---|---|---|
| Ipad register* | 1 | |
| Square stand* | 1 | |
| Cash drawer | 1 | |
| Receipt printer | 1 | |
| Mannequins | 4 | |
| Office computers | 2 | |

#64439516v4

Exhibit 1
Page 41

| | | |
|---|---|---|
| Desk chairs | 4 | |
| File cabinets | 3 | |
| Clothing Rack/Display | 31 | |
| Misc. pricing items | | |
| Microwave | 1 | |
| Refrigerator | 1 | |
| Safe | 1 | |

Total Equipment

GRAND TOTAL

12

## SCHEDULE 1.01-B

## Excluded Assets and Liabilities

**Schedule 1.01-B.a.  Excluded Assets.** Notwithstanding any other provision in this Agreement to the contrary and for the avoidance of any doubt, the Purchased Assets shall not include any of the assets, interests, properties, and rights of the Debtor, the Seller and the Trustee that are not specifically set forth in Schedule 1.01-A, including but not limited to:

(i)        all contracts other than the Lease;

(ii)       any trade accounts payable to third Parties, all accounts receivables whether billed or unbilled, in connection with the Thrift Store;

(iii)      all of the Debtor's, Seller's or the Estate's cash, deposit accounts, cash equivalents, bonds, investments or securities, prepayments, prepaid expenses, retainers, deposits, refunds, insurance proceeds and/or credits for taxes;

(iv)      all personnel records, the corporate seals, organizational documents, minute books, stock books, tax returns, books of account or other records having to do with the corporate organization of the Debtor; and all benefit plans, records, and assets attributable thereto;

(v)       any and all of Seller's or the Estate's claims, causes of action, rights of setoff and rights of recovery relating to claims and causes of action under the Bankruptcy Code including, without limitation, rights, claims and actions under Bankruptcy Code § 544 through 550 and 553, all rights, suits, claims, choses in action, causes of action, defenses, rights of setoff, judgments, damages, rights to payment, litigation rights of any kind or nature whatsoever (whether arising in contract, tort or otherwise), or any equitable remedy for breach of performance if such breach gives rise to a right to payment or any interest in any of the foregoing; and

(vi)      intellectual property and social media accounts.

**Schedule 1.01-B.b.   No Liabilities/Assumption of Liabilities.** Notwithstanding any other provision in this Agreement to the contrary, Buyer shall not assume and shall not be responsible to pay, perform or discharge any liabilities or obligations of Seller, the Debtor, the Estate of any kind or nature whatsoever, whether known or unknown, contingent, matured or otherwise, that exists prior to execution of this Agreement in connection with the Purchased Assets.  Without limiting the generality of the foregoing, the excluded liabilities shall include, but not be limited to, the following:

(i)        any liability for taxes of the Estate, the Seller relating to the Purchased Assets; taxes that arise out of the consummation of the transactions contemplated hereby or that are the responsibility of Seller or the Estate pursuant to this Agreement; or (iii) other taxes of any kind or description (except any liability for taxes that becomes a liability of Buyer at Closing Date under any common law doctrine of de facto merger or transferee or successor liability or otherwise by operation of contract or law); and

Exhibit 1
Page 43

(ii)      any liabilities relating to or arising out any assets not listed as Purchased Assets.

14

# EXHIBIT 2

Exhibit 2
Page 45

1 | Peter J. Mastan (SBN 190250)
E-mail: *peter.mastan@dinsmore.com*
2 | Lovee D. Sarenas (SBN 204361)
E-mail: *lovee.sarenas@dinsmore.com*
3 | **DINSMORE & SHOHL LLP**
550 S. Hope Street, Suite 2800
4 | Los Angeles, CA 90071
Telephone: (213) 335-7737
5 | Facsimile:  (213) 335-7740

6 | Proposed Counsel to the Chapter 7 Trustee
Nancy Zamora

7 |

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **NORTHERN DIVISION**

11 | In re:

12 | HOSPICE PARTNERS, INC., [1]

13 |                          Debtor.

14 |

15 |

16 |

17 |

18 |

19 |

20 |

| Case No.: 9:25-bk-11033 RC |
| Chapter 7 |
| **STIPULATION BETWEEN THE TRUSTEE AND THE U.S. SMALL BUSINESS ADMINISTRATION REGARDING CLAIM NUMBER 5** |
| Order Submitted Concurrently Herewith] |
| Hearing: |
| Date: [To be set] |
| Time: [To be set] |
| Place:  Courtroom 201 |
|            1415 State Street |
|            Santa Barbara, CA 93101 |

21 |

22 |          Nancy Zamora, the chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of the

23 | debtor Hospice Partners, Inc. d.b.a. Wilshire Hospice and Wilshire Hospice Hope Chest ("Debtor")

24 | in the above-captioned bankruptcy case ("Case"), on the one hand, and U.S. Small Business

25 | Administration ("SBA", and together with the Debtor, the "Parties"), on the other hand, by and

26 |

27 | [1] The following related cases are affiliated with the Debtor:  *Wilshire Connected Care, Inc.* (9:25-bk-11028-RC)*; Wilshire Management Services, Inc.* (9:25-bk-11029-RC); *Wilshire Community*

28 | *Services, Inc.* (9:25-bk-11031-RC); *and Wilshire Health & Community Services, Inc.* (9:25-bk-11032-RC).

1    through their counsel of record, hereby enter into this Stipulation with respect to claim number 5

2    filed by the SBA on September 17, 2025 ("Claim 5") based upon the following:

3    <u>**RECITALS**</u>

4    A.    The Debtor, among other things, operated a thrift store located in San Luis Obispo

5    ("Thrift Store") that is associated with certain healthcare facilities.

6    B.    The Debtor and four of its affiliated entities ("Affiliates") each commenced a

7    voluntary bankruptcy case under chapter 7 of title 11 of the United States Code ("Bankruptcy

8    Code") on August 1, 2025 ("Petition Date") in the United States Bankruptcy Court for the Central

9    District of California, Northern Division ("Court").

10    C.    Nancy Zamora ("Trustee") was appointed as the Trustee for the Debtor's Estate

11    [ECF No. 2].

12    D.    Prior to the Petition Date, the Debtor entered into a loan agreement with the SBA

13    under the SBA's Economic Injury Disaster Loan program ("Loan") in the principal amount of

14    $150,000 pursuant to a promissory note ("Note") dated June 14, 2020.  The Note is payable

15    monthly at $641.00 per month with 2.75% interest per annum.  The Note matures in 30 years from

16    the date of the Note.  In consideration for the Loan, the SBA obtained a security interest against

17    personal property assets of the Debtor.

18    E.    On September 17, 2025, the SBA filed Claim 5 asserting a secured claim against the

19    Estate on account of the Loan.  The amount of the claim as of the Petition Date totaled $147,310.43

20    broken down as follows:  unpaid principal in the amount of $147,110.93 and unpaid accrued

21    interest of $199.50.

22    F.    Claim 5 includes a UCC financing statement recorded on July 2, 2020 (File No.

23    207800822594).  There was no Deposit Account Control Agreement among the Debtor, the banks

24    holding the Debtor's bank accounts and the SBA.  As such, the security interest has not been

25    perfect against cash in the Debtor's deposit accounts.

26    G.    Trustee has received an offer to purchase the Estate's interest in certain personal

27    property assets located in the Thrift Store in which the SBA asserts a lien ("Purchased Assets").

28

H.       In an effort to streamline the disposition of the Estate's assets, the Parties have agreed to the following treatment of Claim 5.

**STIPULATION**

NOW THEREFORE, the Parties, through their undersigned counsel, hereby agree as follows:

1.  <u>Recitals</u>.  The Recitals set forth above are incorporated herein by this reference and shall be deemed a material part of the Stipulation.

2.  <u>Bankruptcy Court Approval</u>.  The rights and obligations of the Parties pursuant to this Stipulation are conditioned upon the Court's entry of orders in the Case that are not stayed (i) approving this Stipulation and (ii) granting a motion authorizing the sale of the Estate's interest in the Purchased Assets.

3.  <u>Allowed Secured Claim</u>.  Claim 5 shall be allowed as a secured claim in the amount of $146,000 after deducting the post-petition payments made by the Debtor on 8/1/2025, 8/14/2025 and 9/15/2025.

4.  <u>Credits to the Estate</u>.  The Estate will receive credit against the Allowed Secured Claim shall be reduced further by, (i) any other payments made post-petition against the Allowed Secured Claim drawn from the Debtor's bank account, (ii) payment of $20,000 from the proceeds of the sale of the Purchased Assets; and (iii) any payment made by the Estate to the SBA in connection with the accounts receivables that were outstanding as of the Petition Date ("Accounts Receivables") and recovered by the Estate (collectively, "Estate Credits").  The Allowed Secured Claim shall be reduced by the Estate Credits dollar for dollar.

5.  <u>Personal Properties.</u>  The parties agree that the SBA shall have an Allowed Secured Claim against the Purchased Assets in the sum of $20,000.

6.  <u>Accounts Receivables</u>. For any funds that are recovered by the Estate post-petition from the Accounts Receivables, the Estate and SBA will share the net proceeds 50-50 after deducting the attorneys' fees and costs relating to the recovery of such Accounts Receivable.

7.  <u>Unsecured Claim</u>.  The SBA will have an allowed unsecured claim for the balance of the Allowed Secured Claim after deducting the Estate Credits.

8.  <u>Lien Release</u>.  For the avoidance of any doubt, the SBA hereby releases its lien in the Estate's 50% share and attorneys' fees and costs paid from any Accounts Receivable proceeds, and cash of the Estate, if any.

9.  <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall have jurisdiction to enforce the terms of this Stipulation and the Order approving such Stipulation, and to adjudicate any and all disputes in connection therewith.

10. <u>Authority</u>.  The Trustee is authorized to perform all acts, take any action, and execute and comply with such other documents, instruments, and agreements, that may be required to effectuate the terms and conditions of this Stipulation.  The Parties to this Stipulation represent and warrant that each has reviewed and understands its terms and contents.  The Parties to this Stipulation further represent and warrant that each has the power to execute, deliver, and perform this Stipulation; that each has taken all necessary action to authorize the execution, delivery, and performance of this Stipulation; and that this Stipulation is enforceable in accordance with its terms.

11. <u>Notice</u>.  Except as otherwise provided herein, all notices or other communications required or permitted hereunder shall be in writing, and shall be personally delivered or delivered by Federal Express, for the next business day delivery and shall be deemed received (i) if personally delivered, on the date of delivery, or (ii) if delivered by Federal Express, the next Business Day.

If to Trustee:

> Nancy Zamora
> Chapter 7 Trustee
> Zamora & Hoffmeier
> 633 W. 5th Street
> Suite 2600
> Los Angeles, CA 90071-2053

With a Copy to:

> Dinsmore & Shohl LLP
> Attn: Peter J. Mastan, Esq.
> and Lovee D. Sarenas, Esq.
> 550 S. Hope Street Suite 2800
> Los Angeles, California 90071

#64379623v2

If to the SBA:

> U.S. Small Business Administration
> Attn: Gil Hopenstand, Esq.
> 312 N. Spring St., 5th Floor
> Los Angeles, CA 90012

Notice of change of address shall be in writing and made in the manner detailed in this section. Rejection or other refusal to accept delivery shall be deemed to constitute receipt of the notice, demand, request or communication sent.

12. <u>Execution</u>.  This Stipulation may be executed in counterparts, and such signatures may be by email transmission or facsimile.

13. <u>Entire Agreement</u>.  This Stipulation constitutes the final and complete agreement of the Parties hereto with respect to the subject matter hereof and supersedes all prior or contemporaneous negotiations, promises, covenants, agreements or representations concerning any matters directly, indirectly or collaterally related to the subject matter of this Stipulation. The Parties hereto have expressly and intentionally included in this Stipulation all collateral or additional agreements which may, in any manner, touch or relate to any of the subject matter of this Stipulation and, therefore, all promises, covenants and agreements, collateral or otherwise, are included herein. It is the intention of the Parties to this Stipulation that it shall constitute an integration of all their agreements, and each understands that in the event of any subsequent litigation, controversy or dispute concerning any of its terms, conditions or provisions, no party hereto shall be permitted to offer or introduce any oral or extrinsic evidence concerning any other collateral or oral agreement between the Parties not included herein.  This Stipulation is the product of negotiation among the Parties and represents bargained for, and agreed upon language mutually determined by the Parties to express their intentions in entering into this Stipulation. As a result, any ambiguity or uncertainty regarding the interpretation of this Stipulation shall be deemed to have been caused by, or equally attributable to, all Parties and, in any action to enforce or interpret this Stipulation, it shall be construed in a neutral manner and no term or condition herein shall be construed more or less favorably to any party.

Exhibit 2
Page 50

1    14. <u>Representation by Counsel</u>. The Parties hereby acknowledge and agree that each has

2    been represented by, or had the opportunity to seek representation by, independent counsel of his or

3    its own choice throughout all negotiations that preceded the execution of this Stipulation.

4         IT IS SO STIPULATED.

5    Dated: September <u>30</u>, 2025          DINSMORE & SHOHL LLP

6

7                                 /s/ _____

8                                 Peter J. Mastan
                                   Lovee D. Sarenas
9                                 Counsel for Chapter 7 Trustee Nancy Zamora

10
     Dated: September 30, 2025           BILAL A. ESSAYLI
11                                 Acting United States Attorney
                                   DAVID M. HARRIS
12                                 Assistant United States Attorney
                                   Chief, Civil Division
13                                 JOLENE TANNER
                                   Assistant United States Attorney
14                                 Chief, Tax and Bankruptcy Section

15

16                                 By: _____

17                                 GIL HOPENSTAND
                                   Special Assistant United States Attorney
18                                 Attorneys for U. S. Small Business Administration

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 3

Exhibit 3
Page 52

## FIFTH LEASE AMENDMENT

This is the fifth lease amendment to the lease dated January 7, 2009 **between JFM Limited Partnership as Lessor and Hospice Partners Inc. dba Wilshire Hospice** for property at 445 Higuera Street, containing a building of approximately 5,100 square feet, San Luis Obispo Ca. 93401.

The lease is hereby amended as follows:

The following paragraphs of the lease are hereby amended as follows:

**Parties to lease:** Lessor is now Lamson-Elliott Investments, LLC a California Limited Liability Company.

1. **Term:** The term of the lease is hereby extended until June 30, 2027.

2. **Rent:** Monthly rent shall be as follows:

   | | |
   |---|---|
   | July 2022 -June 2023 | $9,700/month |
   | July 2023-June 2024 | $9,900/month |
   | July 2024-June 2025 | $10,100/month |
   | July 2025-June 2026 | $10,300/month |
   | July 2026-June 2027 | $10,500/month |

4   **Cost of Living Increase** is hereby deleted.

27. **Notices:** Notices to Lessor shall be by email to Sharon Goupil at the following address: srgoupil@gmail.com.

**Addendum-Paragraph 10:** Lessee's maximum annual cost for maintaining and repairing the HVAC system shall be $3,000. Commencing July 2022 annually is defined as from July to June of the following year. For example, the first annual year will be from July 2022 through June of 2023.

Lessee to retain Wighton's Plumbing, Heating and Air Conditioning services as of July 1, 2022 to provide quarterly service to the HVAC units and the cost of the service shall be credited against lessee's maximum $3,000 obligation. Lessee will provide copies evidence of HVAC expenses to Lessor.

Lessor shall be responsible for and costs over $3,000 for repairs and service of the HVAC units.

Lessee to provide lessor reimbursement of $2,660 by June 30, 2022 for past HVAC invoices which were previously sent to lessee.

Exhibit 3
Page 53

**Floor Covering Allowance:** Lessor will provide lessee an allowance of 50% of the cost of new floor covering(s) with a maximum contribution of $12,000. Lessor to approve the proposed replacement(s) and approval will not be unreasonably withheld. Lessee is to be responsible to contract for and supervise installation of new floor covering(s).

**Trash Area Improvements:** Owner will provide an allowance of 50% of the cost of improvements to the trash area with a maximum contribution of $2,000. Lessee to be responsible to contract for and supervise trash area improvements.

All other terms and conditions shall remain the same.

**LESSEE: Hospice Partners, Inc. dba Wilshire Hospice by:**

_____ Title __President/CEO__ Date __5/10/2022__

**LESSOR: Lamson-Elliott Investments, LLC by:**

_____ Date __5/10/2022__
Sharon Goupil, Member

Exhibit 3
Page 54

## FOURTH LEASE AMENDMENT

This is the Fourth Lease Amendment to the lease dated January 7, 2009 between JFM Limited Partnership as Lessor and Hospice Partners Inc., dba Wilshire Hospice for property at 445 Higuera Street, San Luis Obispo, California, 93401 containing a building of approximately 5,000 square feet.

Transferred and assigned to Lamson-Elliott Investments, LLC a California limited liability company as of April 20, 2018.

The lease is hereby amended as follows:

**Term:** The term of the lease is hereby extended until June 30, 2022.

**Monthly Rent:**

| | |
|---|---|
| July 2017 through April 2020 | $9,250 / Month |
| May 2020 through June 2020 | $9,250 / Month – Deferred (COVID-19) |
| July 2020 through December 2020 | $12,583.33 / Monthly + Deferral Amt. Due ($9,500 + 3083.33) |
| January 2021 through June 2022 | $9,500 / Month |

**Brokerage Fee:** Owner shall pay a professional leasing fee to Anderson Commercial Real Estate of 2% of the gross annual rental. The fee shall be paid on an annual basis in July of each year during the renewal period.

All other terms and conditions shall remain the same.

**LESSEE: Hospice Partners, Inc. dba Wilshire Hospice by:**

_____    Date 4/15/2020

Dave Oliver, VP Human Resources

**LESSOR: Lamson-Elliott Investments, LLC**

_____    Date 4/16/2020

Sharon R. Goupil, Member

Exhibit 3
Page 55

## ASSIGNMENT OF LESSOR'S INTEREST IN LEASE

File No:  **4009-5662607 (LB)**

Date:  **April 16, 2018**

**FOR VALUE RECEIVED,** the undersigned Assignor,

**3rd Ave Limited Partnership, which acquired title as JFM Limited Partnership, a California limited partnership**

transfers and assigns to

**Lamson-Elliott Investments, LLC, a California limited liability company**

all right, title and interest as Lessor, and the entire Lessor's interest in and to any and all Leases   covering that certain real property commonly known as **445 Higuera Street, San Luis Obispo, CA 93401** and more particularly described in "Exhibit A", attached hereto and made a part hereof.

Dated:___ April 20, 2018_____

ASSIGNOR:

3rd Ave Limited Partnership, which acquired title
as JFM Limited Partnership, a California limited
partnership

By:_____
    Name: Chris McKiernan
    Title: General Partner

Page 1 of 2

Exhibit 3
Page 56

## EXHIBIT A

LOTS 1 AND 2 IN BLOCK 120 OF OLD MISSION ORCHARD AND HIGUERA TRACT, IN THE CITY OF
SAN LUIS OBISPO, COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, ACCORDING TO MAP
FILED FOR RECORD MARCH 13, 1896 IN BOOK B, PAGE 37 OF MAPS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY.

APN: 002-509-009

Exhibit 3
Page 57

## THIRD LEASE AMENDMENT

This is the third lease amendment to the lease dated January 7, 2009 between **JFM Limited Partnership as lessor and Hospice Partners Inc., dba Wilshire Hospice** for property at **445 Higuera Street,** San Luis Obispo Ca. 93401 containing a building of approximately 5,000 square feet.

The lease is hereby amended as follows:

**TERM:** The term of the lease is hereby extended until June 30, 2022.

**MONTHLY RENT:** Monthly rent shall be as follows:

|  |  |
|---|---|
| July 2017 through June 2020 | $9,250/month |
| July 2020 through June 2022 | $9,500/month |

**BROKERAGE FEE:** Owner shall pay a professional leasing fee to Anderson Commercial Real Estate of 2% of the gross annual rental. The fee shall be paid on an annual basis in July of each year during the renewal period.

All other terms and conditions shall remain the same.

**Lessee: Hospice Partners, Inc. dba Wilshire Hospice by:**

_____  Date _____04/24/2017_____

**Lessor: JFM Limited Partnership by:**

_____  Date ___4/2·|17___

Exhibit 3
Page 58

# SECOND LEASE AMENDMENT

This is the second lease addendum to the lease dated January 7, 2009 between **JFM Limited Partnership as lessor and Hospice Partners of the Central Coast as lessee** for property at **445 Higuera Street**, San Luis Obispo Ca. 93401 containing a building of approximately 5000 square feet. The parties acknowledge the proper name of lessee is Hospice Partners, Inc., dba Wilshire Hospice and that party is the lessee.

The lease is hereby amended as follows:

1. **Term:** The terms of the lease is hereby extended until June 30, 2017.

2. **Rent:**  Monthly rent from July 2014 through June 2017 shall be $8,900 per month. There shall be no cost of living increase during this lease extension.

3. **Right to terminate lease:** The parties agree and acknowledge that lessee's right to terminate the lease was previously terminated by the first lease addendum and lessee has no right to terminate this lease.

4. **Brokerage fees:** Brokerage fees shall be paid to Anderson Commercial Real Estate in lieu of Senn-Lee and Associates since Charles Senn is associated with Anderson Commercial Real Estate

All other terms and conditions shall remain the same.

**LESSEE: Hospice Partners, Inc., dba Wilshire Hospice by:**

_____    Date:_____12/27/13_____

**LESSOR: JFM Limited Partnership**

_____    Date:_____12/17/13_____

Exhibit 3
Page 59

# FIRST LEASE AMENDMENT

This the first amendment to the lease dated January 2009 between Hospice Partners of the Central Coast, Lessee, and James McKiernan, Lessor, for the premises at 445 Higuera Street, San Luis Obispo Ca. 93401.

The lease is hereby amended as follows:

**Paragraph 2 Rental Rate-** As of January 2012 the monthly rent shall be $8500 per month and this rate shall continue to the termination of the lease which is June 30, 2014.

**Right of termination:** The right of lessee to terminate the lease is hereby cancelled.

**Hospice Partners of the Central Coast:**

By:_____Title_____Date_____

**James McKiernan**

_____ Date_____

Exhibit 3
Page 60

## COMMERCIAL LEASE AGREEMENT

Received from Hospice Partners of the Central Coast, hereinafter referred to as "Lessee", the sum of $11,700 Dollars as a deposit which, upon acceptance of this lease, shall belong to Lessor and shall be applied as follows:

Rent for the period of April and May 2009 in the amount of                    $11,700

Lessee hereby leases from Lessor, James McKiernan the premises situated in the City of San Luis Obispo, County of San Luis Obispo, and State of California, described as follows: approximately 5000 square feet of building located at 445 Higuera Street, upon the following terms and conditions:

1) **TERM:** The term hereof shall commence on January 1, 2009 and shall terminate on June 30, 2014.

2) **RENT:** The rent for the term shall be as follows: See Addendum payable in advance. Checks shall be made payable to James McKiernan by US mail to 21 Santa Rosa Street San Luis Obispo Ca. 93405. All rents shall be due and payable on the first day of each month and shall be considered late after the tenth day of each month. A late fee of $100.00 plus interest at 1% per month of the total amount due shall be charged for any rents not received in a timely manner. Tenant agrees to pay $50.00 for each dishonored bank check. The late charge period is not a grace period, and Lessor is entitled to make written demand for any rent if not paid when due. Any unpaid balances remaining after termination of occupancy are subject to the lesser of 1.5% interest per month or the maximum amount allowed by law.

3) **OPTION TO EXTEND:** Provided Lessee is not in default of this lease, Lessee shall have the option to renew this lease for 2 additional terms of 3 years each upon the same terms and conditions as set forth herein. Options to be exercised by providing Lessor with at least 180 days advance written notice prior to term expiration. Rental rate during option periods is defined in the addendum. Lessee's right(s) of renewal shall be subject to approval by Lessor and Lessor shall notify lessee at least 6 months in advance if Lessor will not approve the renewal by Lessee.

4) **COST OF LIVING INCREASE:** The rent provided for in Section 2 shall be adjusted annually on the anniversary date as defined in the addendum.

5) **MODIFICATIONS:** In consideration for receiving the first three months rent free, Lessee agrees to make any required modifications at its expense except those defined as Lessor obligations in the addendum. All modifications are to be made in compliance with applicable building codes, and Lessee is responsible for obtaining any necessary permits. All modifications shall remain the property of Lessor upon termination of Lessee's occupancy except trade fixtures of the Lessee.

6) **USE:** Operation of a retail store with emphasis on used goods and for no other purpose without the prior written consent of Lessor which shall not be unreasonably withheld.

7) **USES PROHIBITED:** Lessee shall not use any portion of the premises for purposes other than those specified hereinabove, and no use shall be made or permitted to be made upon the premises, nor acts done, which will increase the existing rate of insurance upon the property, or cause cancellation of insurance policies covering said property.

8) **ASSIGNMENT AND SUBLETING:** Lessee shall not assign this lease or sublet any portion of the premises without the prior written consent of Lessor, which shall not be unreasonably withheld. Any such assignment or subletting without consent shall be void, and, at the option of the Lessor, may terminate this Lease.

Exhibit 3
Page 61

9) **ORDINANCES AND STATUTES:** Lessee shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force or which may hereafter be in force, pertaining to the premises, occasioned by or affecting the particular manner of use thereof by Lessee. The commencement or pendency of any state or federal court abatement proceeding affecting the use of the premises shall, at the option of the Lessor, be deemed a breach hereof.

10) **MAINTENANCE, REPAIRS AND ALTERATIONS:** Lessee acknowledges that the premises are in good condition and repair, unless otherwise indicated in the addendum. Lessee shall, at its own expense and at all times, maintain the premises in good and safe condition, including plate glass, electrical wiring, plumbing and heating installations and any other systems or equipment upon the premises and shall surrender the same, at termination hereof, in as good condition as received, normal wear and tear excepted, however Lessee shall have thirty (30) days from mutual lease execution to notify Lessor in writing of any deficiencies in connection with the HVAC, electrical or plumbing systems servicing the premises. In the event of any deficiencies set forth in Lessee's written notice, Lessor shall, at its cost and expense, repair said deficiencies within ten (10) days of Lessee's notice. Thereafter, Lessee shall be responsible for all repairs required, excepting the roof, exterior walls and structural foundations which shall be maintained by Lessor. Lessee shall maintain in good condition such portions adjacent to the premises, such as sidewalks, driveways, lawns and shrubbery. No improvement or alteration of the premises shall be made without the prior written consent of the Lessor however lessor acknowledges that lessee will be making improvements and modification to the building which will include removal of walls, cosmetic improvements, and hereby approves same. Prior to the commencement of any substantial repair, improvement or alteration, Lessee shall give Lessor at least ten (10) days written notice in order that Lessor may post appropriate notices to avoid any liability for liens. Lessee shall not commit any waste upon the premises, or any nuisance or act which may disturb the quiet enjoyment of any neighboring tenants. Further, Lessee shall be responsible for any and all upgrades required for Lessee's use of space, including but not limited to, electrical and telephone service.

11) **ENTRY AND INSPECTION:** Lessee shall permit Lessor or Lessor's agents to enter upon the premises at reasonable times and upon reasonable notice, for the purpose of inspecting the same, and will permit Lessor at any time within ninety (90) days prior to the expiration of this lease, to place upon the premises any usual "For Lease" signs, and permit persons desiring to lease the same to inspect the premises thereafter.

12) **INDEMNIFICATION OF LESSOR:** Excluding Lessor's gross negligence or willful misconduct, Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof, and Lessee agrees to hold Lessor harmless from any claims for damages.

13) **LESSEE'S INSURANCE:** Lessee, at its sole cost and expense shall maintain during the term of this Lease a standard tenant's policy which provides public and personal liability and personal property damage insurance with a single combined liability limit of one million ($1,000,000.00) dollars per occurrence, and property damage limits of not less than one million ($1,000,000.00) dollars, with a two million ($2,000,000.00) dollar aggregate, insuring against all liability of Lessee and its authorized representatives arising out of and in connection with Lessee's use or occupancy of the Premises. Both public liability insurance and property damage insurance shall insure performance by Lessee of the indemnity provisions in Paragraph 12, but the limits of such insurance shall not, however, limit the liability of Lessee hereunder. Landlord shall be named as additional insured, and the policy shall contain cross liability endorsements. Lessee shall provide Lessor with an Additional Insured Lessor Endorsement naming James McKiernan as additional insured. The additional insured endorsement will be worded as follows:

Name of Person or Organization: (Additional Insured):

14) **LESSORS INSURANCE:** Lessor shall maintain hazard insurance covering one hundred percent replacement cost of the improvements throughout the lease term. Lessor's insurance will not insure Lessee's personal property or leasehold improvements.

2

Exhibit 3
Page 62

15) SUBROGATION: To the maximum extent permitted by the insurance policies, which may be owned by Lessee and Lessor, Lessee and Lessor, for the benefit of each other, waive any and all rights of subrogation which might otherwise exist.

16) UTILITES/OPERATING EXPENSES: Lessee shall be responsible for the payment of all utilities, including water and sewer, gas, electricity, security lighting, heat, and other services delivered to the premises. Lessor shall pay real estate taxes, building and flood insurance.

17) SIGNS: Lessee shall have the right to install new signage at Lessee's expense subject to the approval of Lessor (which consent shall not be unreasonably withheld) and the City of San Luis Obispo. Use of existing exterior sign panels is granted to lessee.

18) PARKING: Lessee shall be allocated the parking included with the building, however 4 spaces shall be provided for the tenant(s) in the adjacent property on Carmel Street and the location the 4 spaces shall be agreed between lessor and lessee and may be appropriately marked by Lessee.

19) ABANDONMENT OF PREMISES: Lessee shall not vacate or abandon the premises at any time during the term hereof, and if Lessee shall abandon or vacate the premises, or be dispossessed by process of law, or otherwise, any personal property belonging to Lessee left upon the premises shall be deemed to be abandoned, at the option of Lessor.

20) CONDEMNATION: If any part of the premises shall be taken or condemned for public use, and a part thereof remains which is susceptible of occupation hereunder, this Lease shall, as to the part taken, terminate as of the date the condemnor acquires possession, and thereafter Lessee shall be required to pay such proportion of the rent for the remaining term as the value of the premises remaining bears to the total value of the premises at the date of condemnation; provided however, that Lessor may at his option, terminate this Lease as of the date the condemnor acquires possession. In the event that the demised premises are condemned in whole, or that such portion is condemned that the remainder is not susceptible for use hereunder, this lease shall terminate upon the date upon which the condemnor acquires possession. All sums which may be payable on account of any condemnation shall belong to the Lessor, and Lessee shall not be entitled to any part thereof; provided however, the Lessee shall be entitled to retain any amount awarded him for his trade fixtures or moving expenses.

21) TRADE FIXTURES: Any and all improvements made to the premises during the term hereof shall belong to the Lessor, except trade fixtures of the Lessee. Lessee may, upon termination hereof, remove all his trade fixtures, but shall repair or pay for all repairs necessary for damages to the premises occasioned by removal.

22) DESTRUCTION OF PREMISES: In the event of a partial destruction of the premises during the term hereof, from any cause, Lessor shall forthwith repair the same, provided that such repairs can be made within one hundred twenty (120) days under existing governmental laws and regulations, but such partial destruction shall not terminate this Lease, except that Lessee shall be entitled to a proportionate reduction of rent which such repairs are being made, based upon the extent to which the making of such repairs shall interfere with the business of Lessee on the premises. If such repairs cannot be made within said one hundred twenty (120) days, Lessor, at his option, may make the same within a reasonable time, the Lease continuing in effect with the rent proportionately abated as aforesaid, and in the event that Lessor shall not elect to make such repairs which cannot be made within one hundred twenty (120) days, this Lease may be terminated at the option of either party. In the event that the building in which the demised premises may be situated is destroyed to an extent of not less than one-third of the replacement costs thereof, Lessor may elect to terminate this Lease. A total destruction of the building in which the premises may be situated shall terminate this Lease.

23) HAZARDOUS MATERIALS: Lessee shall not use, store, or dispose of any hazardous substances upon the premises, except use and storage of such substances if they are customarily used in Lessee's business, and such use and storage complies with all environmental laws. Hazardous substances mean any hazard, waste, substance, or toxic materials regulated under any environmental laws or regulations applicable to the property.

3

Exhibit 3
Page 63

24) **INSOLVENCY:** In the event a receiver is appointed to take over the business of Lessee, or in the event Lessee makes a general assignment for the benefit of creditors, or Lessee takes or suffers any action under any insolvency or bankruptcy act, the same shall constitute a breach of this Lease by Lessee only if Lessee is delinquent in payment of rent or other monetary obligations.

25) **REMEDIES OF LESSOR ON DEFAULT:** In the event of any breach of this Lease by Lessee, Lessor may, at its option, terminate the Lease and recover from Lessee: (a) the worth at the time of award of the unpaid rent which was earned at the time of termination; (b) the worth at the time of award of the amount by which the unpaid rent would have been earned after termination until the time of the award exceeds the amount of such rental loss that the Lessee proves could have been reasonable avoided; (c ) the worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that Lessee proves could be reasonably avoided; and (d) any other amount necessary to compensate Lessor for all detriment proximately caused by Lessee's failure to perform his obligations under the lease or which in the ordinary course of things would be likely to result therefrom.

Lessor may, in the alternative, continue this Lease in effect, as long as Lessor does not terminate Lessee's right to possession, and Lessor may enforce all his rights and remedies under the Lease, including the right to recover the rent as it becomes due under the Lease. If said breach of Lease continues, Lessor may, at any time thereafter, elect to terminate the Lease. Nothing contained herein shall be deemed to limit any other rights or remedies which Lessor may have. Notwithstanding anything to the contrary contained herein, Lessee shall have ten (10) business days to cure a default after written notice from Lessor.

26) **WAIVER:** No failure of Lessor to enforce any term hereof shall be deemed to be a waiver.

27) **NOTICES:** Any notice which either party may or is required to give, shall be given by mailing the same, postage prepaid, to Lessee at the premises, or Lessor at the address shown below, or at such other place as may be designated by the parties from time to time.

28) **HOLDING OVER:** Any holding over after the expiration of this Lease, with the consent of the Lessor, shall be construed as a month - to - month tenancy at a rental rate of $10,000 per month otherwise in accordance with the terms hereof, as applicable.

29) **TIME:** Time is of the essence of this Lease.

30) **HEIRS, ASSIGNS, SUCCESSORS:** This Lease is binding upon and inures to the benefit of the heirs, assigns and successors in interest to the parties.

31) **LESSOR'S LIABILITY:** The term "Lessor" as used in this Section, shall mean only the owner of the real property or a Lessee's interest in a ground lease of the premises. In the event of any transfer of such title or interest, the Lessor named herein (or the grantor in the case of any subsequent transfers) shall be relieved of all liability related to Lessor's obligations to be performed after such transfer. Provided, however, that any funds in the hands of Lessor or Grantor at the time of such transfer shall be delivered to Grantee. Lessor's aforesaid obligations shall be binding upon Lessor's successors and assigns only during their respective periods of ownership.

32) **ESTOPPEL CERTIFICATE:** (a) Lessee shall at any time upon not less than ten (10) days' prior written notice from Lessor execute, acknowledge and deliver to Lessor a statement in writing [1] certifying that this Lease is unmodified and in full force and effect (or, if modified, stating the nature of such modification and certifying that this Lease, as so modified, is in full force and effect), the amount of any security deposit, and the date to which the rent and other charges are paid in advance, if any; and [2] acknowledging that there are not, to Lessee's knowledge, any uncured defaults on the part of Lessor hereunder, or specifying such defaults if any are claimed. Any such statement may be conclusively relied upon by any prospective purchaser or encumbrancer to the premises. (b) At Lessor's option, Lessee's failure to deliver such statement within such time shall be a material breach of this Lease or shall be conclusive upon Lessee [1] that this Lease is in full force and effect, without modification except as may be represented by Lessor, [2] that there are no uncured

4

Exhibit 3
Page 64

defaults in Lessor's performance, and [3] that not more than one month's rent has been paid in advance or such failure may be considered by Lessor as a default under this Lease.   (c) If Lessor desires to finance, refinance or sell the premises, or any part thereof, Lessee hereby agrees to deliver to any lender or purchaser designated by Lessor such financial statements of Lessee as may be reasonably required by such lender or purchaser.  Such statements shall include the past three years' financial statements of Lessee.  All such financial statements shall be received by Lessor and such lender or purchaser in confidence and shall be used only for the purposes herein set forth.

33) BROKERAGE FEES:  Lessor shall pay a professional brokerage fee to Senn – Lee & Associates Commercial Real Estate in the amount set forth in a separate agreement and as defined in the letter of intent dated December 8, 2008.

34) SALE OF BUILDING: In the event Lessor elects to sell the building during this lease Lessor shall first offer the building to Lessee at the price it will be offered on the open market.

ENTIRE AGREEMENT:   The foregoing and attached addendum constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties. The following addendum, titled "MEDIATION AND ARBITRATION AGREEMENT" has been made a part of this lease before the parties execution hereof.

The undersigned Lessee hereby acknowledges receipt of a copy hereof:
The terms of this Lease are hereby agreed and the individual executing this lease has authority to execute on behalf of Lessee:

LESSEE: Hospice partners of the Central Coast        *VICE PRESIDENT- OPERATIONS*

By: _____        Title: _____

Date: _____

The undersigned Lessor hereby acknowledges receipt of a copy hereof:
The terms of this lease are hereby agreed and the individual executing this lease has authority to execute on behalf of Lessor:

LESSOR: James McKiernan

By: _____        Title: _____

Date: _____

5

Exhibit 3
Page 65

**LEASE ADDENDUM**

This is a lease addendum to the lease between James McKiernan and Hospice Partners of the Central Coast for the premises at 445 Higuera Street, San Luis Obispo Ca. 93401

Paragraph 2--Rent Schedule:

| | |
|---|---|
| January-March 2009 | No Rent |
| April-August 2009 | $5850/ month |
| September-December 2009 | $6850/month |
| January-June 2010 | $7350/month |
| July 2010-June 2011 | $8350/month |
| July 2011-June 2012 | $8684/month |
| July 2012-June 2013 | $9031/month |
| July 2013-June 2014 | $9392/month |

Paragraph 3--Rental rate during renewal periods
The rental rate during the renewal periods shall be negotiated at market rent. In the event the parties are unable to agree on market rent an MAI appraiser whose primary place of business is in San Luis Obispo shall be retained by both parties to do a rent survey and establish the market rent for the premises and the cost of the appraiser shall be split 50/50 between the parties. In no event will the rent exceed $10,000 for the first option period and $12,000 during the second option period.

Right to terminate the lease
Lessee shall have the right to terminate the lease on July 1, 2011 and July 1 2012 by providing lessor 6 months or more advance notice of termination of the lease.

Paragraph 5 & 10--Building Condition and obligations of lessor
Lessor shall at lessor's sole expense cause the electrical, plumbing, and HVAC systems to be in good operating condition and shall cause the HVAC system to be serviced by January 31, 2009
Lessee shall cause the parking lot to restriped and resealed not later than May 31 2009 and may deduct the cost thereof from its rent and the maximum deduction shall be $2000. Lessee shall provide lessor with a copy of the bill for costs of improving the parking lot.

Paragraph 10--HVAC Maintenance
Lessee's maximum annual cost for maintaining the HVAC system shall be $1500. Any additional cost of maintaining or replacing the system shall be the obligation of lessor.

Exhibit 3
Page 66

**Building plans**

Lessor shall provide lessee a copy of all building plans (including electrical and mechanical) for the property in his possession.

**Due Diligence period**

Lessee shall have until December 31, 2009 to determine that the property is satisfactory for the intended use and that necessary improvements can be completed at a cost satisfactory to lessee. Lessee may use necessary consultants to assist lessee in this determination.

Lessor

Lessee

Exhibit 3
Page 67

## MEDIATION AND ARBITRATION AGREEMENT

Standard Lease Addendum

Dated: JANUARY 1, 2009

By and between (Lessor): JAMES Mc KIERNAN

(Lessee): HOSPICE PARTNERS OF THE CENTRAL COAST

Address of Premises: 445 HIGUERA ST., SAN LUIS OBISPO, CA

In the event of a fee dispute between the Lessor and Lessee (each a "Party and together the "Parties") arising out of, or related to, this Lease ("Dispute"), the Parties agree to resolve such Dispute pursuant to the procedures set forth in this Mediation and Arbitration Agreement ("Agreement").

**Informal Resolution Process**

In the event of a Dispute, the claiming Party ("Claiming Party") shall notify the responding Party ("Responding Party") in writing of any and all fee issues arising out of, or related to the Lease ("Dispute Notice"). The Responding Party shall respond to the Dispute Notice in writing ("Response") within five (5) days following receipt thereof. The Claiming Party shall include in this Dispute Notice and the Responding Party shall include in the Response, the name of each Party's representative vested with full and final authorization to resolve the Dispute ("Decision Maker").

If the Dispute is not resolved informally within fifteen (15) days from the date of the Dispute Notice, the Dispute shall be submitted to non-binding mediation ("Mediation") in accordance with the procedures set forth below.

**Non-Binding Mediation Process**

On or before the twentieth (20th) calendar day following the date of the Dispute Notice, the Parties shall select a mutually agreed upon mediator from Judicial Arbitration & Mediation Services, Inc. ("JAMS") or any other mediation organization. If the Parties are unable to mutually agree upon a mediator, then a mediator selected by the Claiming Party and a mediator selected by the Responding Party shall select a third mediator to conduct the Mediation. In any event, the final selection of a mediator (the "Mediator") shall be accomplished no later than thirty (30) days from the date of the Dispute Notice. Within three (3) days following the selection of the Mediator, the Parties and the Mediator shall designate the time, date and location to hold the Mediation. The Parties agree that the Mediation shall commence prior to the seventh (7th) calendar day following the date of the Dispute Notice.

During the Mediation, each Party shall be represented by its respective Decision Maker who may retain additional persons to offer statements and evidence as deemed reasonably necessary. The Parties, in consultation with the Mediator, shall agree upon procedures and the format for Mediation including the time for submitting a pre-mediation memorandum. The Mediator is authorized to conduct both joint sessions and separate private sessions with the Parties.

Each Party shall pay one half of the Mediator's fee, unless the Parties agree otherwise in writing. The Mediator shall be disqualified as a witness, consultant, expert, or counsel of either Party with respect to the Dispute and any related matters.

Exhibit 3
Page 68

In the event the mediation process does not resolve the Dispute, the parties agree to submit the Dispute to binding arbitration ("Arbitration") pursuant to the procedures set forth below.

**Binding Arbitration Process**

Within twenty (20) calendar days following the conclusion of an unsuccessful Mediation, the Parties shall select a mutually agreed upon arbitrator from JAMS, its successor organization or another mutually agreed source. If the Parties are unable to mutually agree upon an arbitrator, then the arbitrator selected by the Claiming Party and an arbitrator selected from JAMS by the Responding Party shall each select a third arbitrator who shall then serve as the sole arbitrator to conduct the Arbitration. In any event, the arbitrator (the "Arbitrator") shall be selected no later than thirty (30) calendar days from the conclusion of the Mediation.

Within three (3) days following the selection of the Arbitrator, the Parties and the Arbitrator shall designate the hour, date and location to hold the Arbitration. The Parties agree that the Arbitration shall commence prior to the sixtieth (60th) calendar day following the conclusion of the Mediation.

The Parties agree that the Arbitration shall be conducted in accordance with the commercial arbitration rules of the American Arbitration Association, unless mutually agreed to otherwise, and judgment by the Arbitrator may be entered in a court having jurisdiction.

**A.  Disputes Excluded from Arbitration**

The following claims, disputes or disagreements under this Lease are expressly excluded from the Arbitration procedures set forth herein: 1. Disputes for which a different resolution determination is specifically set forth in this Lease, 2. All claims by either party which (a) seek a legal or equitable remedy other than enforcement or determination of rights under this Lease, or (b) are primarily founded upon claims of fraud, willful misconduct, bad faith or any other allegations of tortious action, and seek the award of punitive or exemplary damages, and 3. Claims relating to (a) Lessor's exercise of any unlawful distraint rights pursuant to applicable law or (b) rights or remedies used by Lessor to gain possession of the Premises or terminate Lessee's right of possession to the Premises, all of which disputes shall be resolved by suit filed in the applicable court of jurisdiction, the decision of which court shall be subject to appeal pursuant to applicable law.

**B.  Arbitration Procedure**

1.    Pre-Hearing Actions. The Arbitrator shall schedule a pre-hearing conference to resolve procedural matters, arrange for the exchange of information, obtain stipulations, and narrow the issues. The scope and duration of discovery will be within the discretion of the Arbitrator, as agreed by this Agreement. The Arbitrator shall have the discretion to order a pre-hearing exchange of information by the Parties, including, without limitation, production of requested documents, exchange of summaries of testimony of proposed witnesses, and examination by deposition of parties and third-party witnesses. This discretion shall be exercised in favor of discovery reasonable under the circumstances. The Arbitrator shall issue subpoenas and subpoenas duces tecum as provided for in the applicable statutes or case law.

2.    The Decision. The arbitration shall be conducted in the city in which, or nearest to which, the Premises are located at a reasonably convenient site.

Any Party may be represented by counsel in rendering a decision(s), the Arbitrator shall interpret the rights and obligations of the Parties according to the substantive laws and the terms and provisions of this Lease. The decision shall be conclusive and binding, and it may thereafter be confirmed as a judgment by

Exhibit 3
Page 69

the award of applicable jurisdiction, subject only to challenge on the grounds set forth in the applicable statutory or case law. The Arbitrator may award such, including without limitation, Arbitrator's fees and costs, attorneys' fees, and expert and witness costs, to the prevailing party, if any, as determined by the Arbitrator in his discretion.

Whenever a matter which has been submitted to Arbitration involves a dispute as to whether or not a particular act or omission (other than a failure to pay money) constitutes a default under the Lease, the time to commence or cease such action shall be tolled from the date of the Dispute Notice through and until the date the Arbitrator renders his or her decision. Provided, however, that this provision shall NOT apply in the event that the Arbitrator determines that the Dispute Notice was prepared in bad faith.

Whenever a Dispute arises between the Parties concerning whether or not the failure to make a payment of money constitutes a default, the service of a Dispute Notice shall NOT toll the time period in which to pay the money. The Party allegedly obligated to pay the money may, however, elect to pay the money "under protest" by accompanying said payment with a written statement setting forth the reasons for such protest. If thereafter, the Arbitrator determines that the Party who received said money was not entitled to such payment, said money shall be promptly returned to the Party who paid such money under protest together with interest thereon as set forth in the Lease. If a Party makes a payment "under protest" but no Dispute Notice is filed within thirty (30) days, then such protest shall be deemed waived.

Exhibit 3
Page 70

# EXHIBIT 4

Exhibit 4
Page 71

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

Corporation Service Company
800-858-5294

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
Springfield, IL 62703-4261
USA

**DOCUMENT NUMBER: 92159680002**
**FILING NUMBER: 20-7800822594**
**FILING DATE: 07/02/2020 17:56**

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Hospice Partners, Inc. | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 285 South Street, Suite J | San Luis Obispo | CA | 93401 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| U.S. Small Business Administration | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 10737 Gateway West, #300 | El Paso | TX | 79935 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto. EXEMPT Per California Government Code Section 6103 PLEASE EXPEDITE 411264 7905

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
[190360790]

**FILING OFFICE COPY**

Exhibit 4
Page 72





U250158219630

**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT AMENDMENT (UCC 3)**

California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

| For Office Use Only |
|---|
| **-FILED-** |
| File No.: U250158219630 |
| Date Filed: 6/24/2025 |

| Submitter Information: | |
|---|---|
| Contact Name | CORPORATION SERVICE COMPANY |
| Organization Name | CSC |
| Phone Number | 18008585294 |
| Email Address | SPRFiling@cscglobal.com |
| Address | 801 ADLAI STEVENSON DR SPRINGFIELD, IL 62703 |

| Amendment Action Information: | |
|---|---|
| Initial Financing Statement File Number | 207800822594 |
| Date Filed | 07/02/2020 |
| Amendment Action | Continuation |

Name of Secured Party of Record Authorizing This Amendment:

☐ If this Amendment is authorized by a Debtor, check this box and select the name of the Authorizing Debtor below.

| Authorizing Secured Party Name | U.S. SMALL BUSINESS ADMINISTRATION |
|---|---|

Optional Filer Reference Information:
3657493

B3802-4450 06/24/2025 8:10 PM Received by California Secretary of State

Exhibit 4
Page 73
Page 1 of 1

1

**PROOF OF SERVICE OF DOCUMENT**

2

3

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is **655 West Broadway, Suite 800, San Diego, CA 92101**

4

5

6

7

8

9

A true and correct copy of the foregoing document entitled (*specify*): **TRUSTEE'S MOTION FOR THE ENTRY OF AN ORDER (A) APPROVING SALE OF PURCHASED ASSETS FREE AND CLEAR OF ALL INTERESTS; (B) APPROVING OVERBID PROCEDURES; (C) GRANTING 11 U.S.C. § 363(m) PROTECTION TO BUYER; (D) REJECTING UNEXPIRED LEASE PURSUANT TO 11 U.S.C. § 365(a) AS OF THE PETITION DATE; AND (E) APPROVING THE STIPULATION BETWEEN THE U.S. SMALL BUSINESS ADMINISTRATION AND THE TRUSTEE CONCERNING THE LIEN ON PURCHASED ASSETS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS AND EXHIBITS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

10

11

12

13

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to  he document. On (*date*) October 31, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

14

15

16

17

18

- **Elan S Levey** - elan.levey@usdoj.gov, usacac.tax@usdoj.gov; caseview.ecf@usdoj.gov; usacac.tax@usdoj.gov
- **Edwin J Rambuski** - edwin@rambuskilaw.com, marissa@rambuskilaw.com
- **Paul F Ready** - becky@farmerandready.com
- **Lovee D Sarenas** - lovee.sarenas@dinsmore.com, wendy.yones@dinsmore.com; adelya.ashralieva@dinsmore.com
- **Felicita A Torres** - torres@g-tlaw.com
- **United States Trustee (ND)** - ustpregion16.nd.ecf@usdoj.gov
- **Nancy J Zamora (TR)** - zamora3@aol.com, nzamora@ecf.axosfs.com

19

20

21

22

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) October 31, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

23

24

25

SLBiggs
10960 Wilshire Blvd., Ste. 1100
Los Angeles, CA 90024

26

27

28

Law Offices of Edwin J. Rambuski
Attn: Edwin J. Rambuski, Esq.
1401 Higuera Street
San Luis Obispo, CA 93401

Lamson-Elliott Investments, LLC
Attn: Lauren Somma & Sharon Goupil
4687 Coyote Canyon Road
San Luis Obispo, CA 93401

Lumina Alliance
51 Zaca Lane
San Luis Obispo, CA 93401

U.S. Small Business Administration
Attn: Gil Hopenstad, Esq.
312 N. Spring Street, 5th Floor
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE
TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to
F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons
and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here
constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed
no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and
correct.

| October 31, 2025 | Wendy A. Yones | /s/ Wendy A. Yones |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |